[No. B194461. Second Dist., Div. Two. Feb. 17, 2009.]

LARRY CALEMINE et al., Plaintiffs and Appellants, v.
WALTER SAMUELSON, Defendant and Respondent.

## COUNSEL

Law Offices of J.R. Seashore, J.R. Seashore; Esner, Chang & Ellis, Stuart B. Esner and Holly N. Boyer for Plaintiffs and Appellants.

Hanger, Steinberg, Shapiro & Ash, Jody Steinberg and Josephine N. Baurac for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—Plaintiffs and appellants Larry and Camille Calemine appeal from a summary judgment entered in favor of defendant and respondent Walter Samuelson (Samuelson). The trial court ruled that Samuelson, the seller of a condominium purchased by appellants, met his burden to show the absence of a triable issue of fact concerning his disclosure of facts relating to water intrusion.

We reverse. While the evidence established that Samuelson disclosed the existence of previous water intrusion, it further established that he did not disclose the existence of two lawsuits relating to that water intrusion. A triable issue of fact remained as to whether the prior litigation was a material fact which should have been disclosed.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Condominium's Water Intrusion Problems.*

In February 1983, Samuelson and his wife became the initial owners of a three-story condominium, unit 5, located on Victory Boulevard in Woodland Hills (condominium), in building 2 of a development known as Jared Court. The lower level of the condominium was comprised of a three-car garage and a carpeted and windowless "bonus room" that Samuelson used as a sewing room and office. Samuelson resided in the condominium until July 2002 when he sold it to appellants.

Between 1983 and 1999, Samuelson personally observed intermittent incidents of water intrusion and flooding in the lower level of the condominium. In 1986, the Jared Court Homeowners Association (HOA) and individual unit owners, including Samuelson, brought a lawsuit against the developer alleging design and construction defects in the units and common areas (developer lawsuit).

In 1992, the HOA hired Westar Flooring (Westar) to repair and waterproof the affected areas of Jared Court. After the Westar work in 1992, the bonus room area did not suffer any further water intrusion problems. Samuelson was aware, however, that Westar's repairs were not effective throughout Jared Court, and he knew that the HOA filed a lawsuit against Westar in 1996 (Westar lawsuit). Samuelson served as president of the HOA board from March 1993 to June 1994 and as treasurer of the HOA board from June 1994 to April 2001.

A September 1997 report prepared by a consultant retained by the HOA in connection with the Westar lawsuit, Robert Jacobs & Associates (Jacobs), estimated the cost of the waterproofing repairs at $724,516 and characterized the repair process as lengthy and extensive. A supplemental report prepared by Jacobs in November 1997 added $296,380.72 to the original estimate following testing of individual units.

The Westar lawsuit settled in 1998. Minutes from the March 24, 1998 annual meeting of the HOA indicated that the HOA received $410,000 from the settlement after payment of attorney fees. The HOA board solicited and considered bids from several contractors to perform repairs and waterproofing. It received bids from Construction Headquarters Inc. (CHI) to undertake repairs to the Jared Court common area and individual units, including the

condominium, ranging from $119,800 to $305,000. CHI's lowest and ultimately accepted proposal was addressed to Samuelson in care of the HOA, and Samuelson served as the "point man" in connection with the work CHI ultimately performed. The final $119,800 CHI proposal cautioned: "It must be clearly understood that this is only one phase of our due diligence in attempting to mitigate the water intrusion problem being encountered at this time. [¶] This proposal will only solve a portion of the problem. The remaining work is necessary to mitigate fully." Once the repairs were completed, CHI wrote to Samuelson in care of the HOA that the "next proposed phase of work will apparently involve clean up, patching, painting and 'band-aid' covering up of existing subterranean garage and storage room walls." CHI also wrote to confirm several discussions with HOA board members in which it indicated "we can take no responsibility nor give any guarantees whatsoever, that the water penetration issues, through the retaining walls, will be controlled or corrected, due to the existing hydrostatic pressures, capillary action from ground water intrusion or any other issues relating to dampness, as we are not addressing these issues in the garage/storage contract."

CHI completed its work in November 1998. After that time, Samuelson did not observe any further flooding or water intrusion into the garage area of the condominium, though occasionally damp spots would appear on the garage floor during periods of heavy rain.

*The Sale of the Condominium to Appellants.*

During the fall of 2001, Samuelson and appellants began negotiations for the sale of the condominium.[1] In connection with the transaction, in November 2001 Samuelson signed a real estate transfer disclosure statement (transfer disclosure) in which he stated he was aware of "[f]looding, drainage or grading problems" and added the notation "[h]eavy rains below ground, walls & slab." According to Samuelson, water came up through the cracks in the garage slab approximately five to six times during the almost 20 years he lived in the condominium. The section of the transfer disclosure to be completed by the listing agent further stated: "Water damage noted in garage. Buyer is urged to get a physical inspection from a licensed contractor."

---

[1] Samuelson signed the relevant disclosure documents in November 2001 and declared that he began negotiating with appellants at that time. Appellants, on the other hand, contend that negotiations began in April 2002; escrow did not close until July 2002. Because the parties do not address this time lag, we will consider it immaterial for the purposes of reviewing the summary judgment motion.

In May 2002, appellants retained Preferred Home Inspection Service, Inc., to inspect the condominium. According to the inspection report, the inspector observed: "Evidence of below grade leakage is evident at garage south and west walls. (Moisture bubbling & efflorescence at below grade foundation walls & staining along hairline floor cracks in garage.) Moisture staining was also noted at base boards at lower level room. Status of leakage cannot be visually ascertained. Further investigate to determine if repairs have been made or will be made. Below grade leakage occurrence typically would be an H.O.A. repair. See seller for status/information." In June 2002, Carpenter Termite Control Company prepared a report after its own inspection, which noted with respect to the garage area that "[e]xcessive moisture has damaged drywall and plaster at rear and left side of garage. Source of excessive moisture appears to have been from soil abutting [*sic*] retaining wall. Other Contractors have installed additional concrete and drainage in the past. No moisture was evidence [*sic*] at time of inspection."

After receiving this report, appellants contacted Samuelson for an explanation. According to appellants, Samuelson was standing in the lower level of the condominium when he stated: " 'We've had some water intrusion near the bottom of this wall and up through the slab and the homeowners association came in. They dug out around the patio areas, waterproofed the wall, put in French drains. Then inside the garage—on the outside they dug down the wall, exposed the wall, waterproofed the wall put French drains in. Put the dirt back in. Rebuilt the patios. On the inside of the unit they waterproofed the walls and put these drywall'—you know, drywall in those areas. 'Haven't had a problem since. Problem solved.' " Samuelson recalled stating that there had been some water damage "and we weren't having it anymore, it had been fixed." On the basis of Samuelson's explanation, appellants believed the water intrusion problem was a minor issue.

Appellants moved into the condominium in July 2002 when escrow closed. In January 2005, the condominium garage flooded. At that time, appellants first learned of the developer lawsuit and the Westar lawsuit. Appellants discovered that the HOA had filed the developer lawsuit, received a recovery and made repairs. They further learned that the Westar lawsuit resulted from the repairs being ineffective, that the Westar lawsuit had settled and that additional repairs had been made both inside and outside of the condominium. Samuelson had not disclosed the litigation in the transfer disclosure because he believed he was obligated only to disclose pending actions. Nor did Samuelson ever mention the lawsuits during the course of two or three conversations he had with appellants during the transaction. The flooding recurred in March 2005 and January and April 2006.

As a result of appellants' complaint to the HOA about their lack of knowledge of the water intrusion litigation and repairs, the HOA prepared a letter outlining the history of its repair efforts that was designed to be provided to prospective purchasers at Jared Court.

*The Pleadings and Summary Judgment Motion.*

Appellants filed their complaint in August 2005 against Samuelson, the HOA and others, alleging causes of action for nuisance, breach of contract, negligence and misrepresentation/concealment. In connection with the negligence cause of action brought against Samuelson, appellants alleged that he breached his duty to make full and complete disclosure of past actions. In support of the misrepresentation claim, appellants alleged that Samuelson "made representations to plaintiffs that Unit #5 was free of defects [and] was fit for habitation" and that he failed to disclose he was a member of the HOA board at the time of the second lawsuit and failed to describe the repairs made as a result thereof. They further alleged that Samuelson knew his representations were false when made and knew appellants were unaware of the truth, that they acted in justifiable reliance on his representations, and that they suffered damage as a proximate result of the misleading statements and concealed information. Samuelson answered in January 2006, generally denying the allegations and asserting several affirmative defenses.

In April 2006, Samuelson moved for summary judgment and alternatively for summary adjudication. He asserted that the undisputed evidence showed appellants were aware of all material facts relating to the water intrusion, Samuelson did not make any representations that were knowingly false and appellants did not justifiably rely on any of Samuelson's representations. In support of the motion, Samuelson submitted his own declaration, copies of documents associated with appellants' purchase of the condominium and copies of pleadings from actions filed by the HOA.

Appellants opposed the motion. They asserted that triable issues of fact existed as to whether the information Samuelson provided to them in the transfer disclosure was incomplete, misleading and/or inaccurate. In support of their opposition, they submitted Larry Calemine's (Calemine) declaration, deposition excerpts, copies of documents associated with their condominium purchase and copies of HOA documents. They also filed evidentiary objections to portions of Samuelson's declaration.

In turn, Samuelson filed evidentiary objections to portions of appellants' evidence. On reply, he also asserted that the transfer disclosure imposed no duty on him to disclose the specific facts which appellants claimed were omitted or concealed, including the scope of prior repairs, the decision to implement limited repairs, the existence of nonpending lawsuits and the settlement of a lawsuit. He also offered excerpts of Calemine's deposition.

Following a July 17, 2006 hearing, the trial court granted the motion, finding "that there was sufficient disclosure of defects by moving defendant Walter Samuelson. There is no triable issue of material fact regarding a misrepresentation or failure to disclose as to water intrusion." The trial court overruled all evidentiary objections. Judgment was entered in August 2006 and this appeal followed.

## DISCUSSION

Appellants contend that the evidence presented below raised a triable issue of fact as to whether Samuelson's disclosures concerning the condominium's water intrusion were adequate. While the evidence was undisputed that Samuelson sufficiently disclosed the existence of the water intrusion itself, a triable issue of fact remained as to whether disclosure of the prior lawsuits would have been material to appellants and thus should have been disclosed.

I. *Standard of Review.*

A defendant moving for summary adjudication or summary judgment bears the initial burden to show that a cause of action has no merit by establishing that "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583 [37 Cal.Rptr.2d 653].) Once the defendant meets this burden, the burden shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto," supported by evidence of specific facts and not mere allegations of the pleadings. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–851 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1013–1014 [48 Cal.Rptr.2d 174].)

We review a grant of summary judgment de novo. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.) We assume the role of the trial

court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers so that all doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].) While we must review a summary judgment motion by the same standards as the trial court, we independently determine as a matter of law the construction and effect of the facts presented. (*Ibid.*) "The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or inferences reasonably deducible from the evidence, which raise a triable issue of material fact." (*Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1292 [28 Cal.Rptr.3d 92].)

## II. *The Duty to Disclose.*

A real estate seller has both a common law and statutory duty of disclosure. The court in *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544 [76 Cal.Rptr.2d 101], outlined the common law duty, explaining: "In the context of a real estate transaction, '[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]' [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.]" A seller's duty of disclosure is limited to material facts; once the essential facts are disclosed a seller is not under a duty to provide details that would merely serve to elaborate on the disclosed facts. (*Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 8–9 [70 Cal.Rptr.2d 1].) Where a seller fails to disclose a material fact, he may be subject to liability "for mere nondisclosure since his conduct in the transaction *amounts to a representation of the nonexistence of the facts which he has failed to disclose* [citation]." (*Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 736 [29 Cal.Rptr. 201].) Generally, whether the undisclosed matter was of sufficient materiality to have affected the value or desirability of the property is a question of fact. (*Shapiro v. Sutherland, supra,* at p. 1544; accord, *Alexander v. McKnight* (1992) 7 Cal.App.4th 973, 977 [9 Cal.Rptr.2d 453].)

With respect to a seller's statutory obligations, effective January 1, 1987, the Legislature enacted division 2, part 4, title 4, chapter 2, article 1.5 of the Civil Code which specifies the information a residential real property seller must disclose when transferring the property. In enacting this article, the Legislature made clear it did not intend to alter a seller's common law duty of

disclosure. The purpose of the enactment was instead to make the required disclosures specific and clear. In its statement of legislative intent the Legislature declared it "did not intend to affect the existing obligations of the parties to a real estate contract, or their agents, to disclose any fact materially affecting the value and desirability of the property, including, but not limited to, the physical conditions of the property and previously received reports of physical inspections noted on the disclosure form set forth in Section 1102.6 or 1102.6a, and that nothing in this article shall be construed to change the duty of a real estate broker or salesperson pursuant to Section 2079." (Civ. Code, § 1102.1, subd. (a).)

■ The Legislature specified the precise disclosure form which must be used. (Civ. Code, § 1102.6.) Among the items which must be disclosed, the legislatively mandated form requires a seller to answer whether he or she is "aware of any significant defects/malfunctions" in the slabs and sidewalks, and whether he or she is aware of "[f]looding, drainage or grading problems" and "[a]ny lawsuits by or against the Seller threatening to or affecting this real property, including any lawsuits alleging a defect or deficiency in this real property or 'common areas' (facilities such as pools, tennis courts, walkways, or other areas, co-owned in undivided interest with others)." (Civ. Code, § 1102.6.) In addition to mandating the use of the disclosure form, the Legislature also required the seller to make each disclosure in "good faith," defined as "honesty in fact in the conduct of the transaction." (Civ. Code, § 1102.7.)

We review the summary judgment with these standards in mind.

III. *A Triable Issue of Fact Existed with Respect to the Adequacy of Samuelson's Disclosures.*

In the third cause of action for negligence, appellants alleged that Samuelson breached his duty to "make full and complete disclosures of past actions to new owners such as Plaintiffs and not refuse or conceal past activity." The fourth cause of action for misrepresentation/concealment more specifically alleged: "On or about June, 2002, defendant Walter Samuelson made representations to plaintiffs that Unit #5 was free of defects [and] was fit for habitation. Defendants did not disclose that Samuelson had been a member of the Board at the time of Lawsuit #2 [the Westar lawsuit] nor what had been done with the funds nor repairs made subsequent thereto. [¶] At the time, June 2002, when Samuelson made representations, he knew them to be false, inaccurate and made solely for the intention of facilitating the sale of his

property to the Plaintiffs who were unaware of the true nature of the conditions and did not have access to the information." In opposition to summary judgment, appellants identified the undisclosed "past actions" as falling into two general categories—facts relating to the water intrusion problem and the condition of the condominium itself, and facts relating to the developer lawsuit and the Westar lawsuit.

The trial court correctly determined the undisputed evidence established that Samuelson's disclosures concerning the existence of water intrusion were adequate. On the transfer disclosure—the form mandated by Civil Code section 1102.6—Samuelson indicated that the slabs and sidewalks suffered from "defects/malfunctions" in the form of "underground water." Moreover, he represented that he was aware of "[f]looding, drainage or grading problems" which he described as "[h]eavy rains below ground, walls & slab." Orally, Samuelson confirmed the existence of past water intrusion and generally outlined the repairs that had been made to resolve the problem. Appellants offered no evidence to show that Samuelson had any reason to doubt the accuracy of his representation that the repairs had resolved the problem in the condominium's lower level, as the evidence was undisputed that the bonus room area and garage had not suffered from water intrusion for several years prior to appellants' purchase.

Appellants suggest that a triable issue of fact existed as to whether Samuelson should have disclosed more detail concerning the repairs, including that the HOA utilized a low bid which may not have been designed to "mitigate fully" the water intrusion problem. In the context of disclosures associated with the water intrusion problem itself, the trial court properly ruled there was no triable issue of fact. In several respects, the facts here are akin to those in *Pagano v. Krohn, supra*, 60 Cal.App.4th 1. There, after several units in a condominium development suffered water intrusion, the homeowners association brought suit against the developer. In response to a questionnaire to all unit owners asking them to describe any moisture intrusion problems in their units, the seller reported no problems inside her unit but complained of efflorescence on the concrete in her garage and algae or moss on the garage's exterior wall. These problems disappeared and did not recur once certain sprinklers were adjusted so as not to spray on the affected areas. (*Id.* at pp. 10–11.) During escrow, the seller disclosed both the fact that several of the units within the condominium association had suffered water damage and the existence of the lawsuit against the developer. (*Id.* at p. 6.) After escrow closed, the buyers discovered dry rot and dampness in an area from which carpet and baseboard had been removed and brought suit against the seller and others alleging a failure to disclose the water damage to the garage. (*Id.* at pp. 6–7.)

The appellate court affirmed summary judgment in favor of the seller, reasoning that the buyers were informed of "the essential facts concerning water intrusion at Blackhorse—i.e., that there was a water intrusion problem in the development which affected some of the units and resulted in litigation against the developer." (*Pagano v. Krohn, supra,* 60 Cal.App.4th at pp. 8, 10.) The court rejected the buyers' argument that the seller's agent should have disclosed additional facts relating to the water intrusion problem—including her receipt of homeowners association documents chronicling the problem, her knowledge of problems in other units and her awareness of the specific allegations in the developer lawsuit—reasoning that "[d]isclosure of these additional facts would have served only as elaboration on the basic disclosed fact that there was a water intrusion problem in the development affecting some of the units and resulting in a lawsuit against the developer." (*Id.* at p. 9.) It further rejected the argument that the seller should have disclosed the past occurrence of efflorescence or algae she observed more than one year before the sale, particularly given that it was unclear whether the condition related to the water intrusion problem generally and the problem had been remedied long before the sale. (*Id.* at pp. 10–11.)

Here, likewise, appellants were apprised of the water intrusion problem in the condominium and were urged to obtain a physical inspection, notwithstanding Samuelson's oral representations concerning the repair. Further information concerning the type and scope of repairs made fell within the category of "elaboration" which the *Pagano* court determined is not part of a seller's duty of disclosure. Moreover, the evidence established that Samuelson's representations were made in good faith, as the condominium had not suffered from water intrusion after the repairs were made. Accordingly, the trial court properly concluded the undisputed evidence established that Samuelson neither misrepresented nor failed to disclose facts relating to water intrusion within the condominium. But the same cannot be said with respect to Samuelson's failure to disclose the existence of the two previous lawsuits relating to water intrusion repairs.

The transfer disclosure mandated by Civil Code section 1102.6 requires a seller to state whether he or she is aware of "[a]ny lawsuits by or against the Seller threatening to or affecting this real property, including any lawsuits alleging a defect or deficiency in this real property or 'common areas' (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others)." Samuelson declared that he responded "no" to the foregoing inquiry because he believed the form required disclosure of only then pending lawsuits. While we observe that Samuelson's interpretation of his disclosure obligations finds no support in the language of Civil Code section 1102.6, resolution of the scope of the statutory requirement is

unnecessary to our determination.[2] Samuelson owed a common law "duty to disclose information materially affecting the value or the desirabil[i]ty of the property." (*Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 866 [48 Cal.Rptr.2d 758].) The evidence presented in connection with the summary judgment motion established a triable issue of fact as to whether the existence of the developer lawsuit and the Westar lawsuit was the type of information which should have been disclosed.

According to Samuelson's own declaration, the HOA and Samuelson as a unit owner filed the developer action after the lower level of the condominium suffered intermittent incidents of water intrusion and flooding for several years. Thereafter, Westar performed repair work. Although the condominium's bonus room did not suffer further water intrusion after the Westar work, Samuelson knew that the Westar repairs in the common areas were not effective and resulted in the Westar lawsuit. At the time of the Westar settlement, Samuelson was treasurer of the HOA board. According to Samuelson's deposition, in that capacity he solicited bids from CHI and acted as the "point man" in connection with the repairs performed by CHI. With respect to those repairs, CHI informed the HOA its "proposal will only solve a portion of the problem" and that "remaining work is necessary to mitigate fully." Samuelson did not disclose the existence or outcome of the lawsuits in either the transfer disclosure statement or in the two or three conversations he had with appellants before escrow closed.

In a real estate transaction, "whether the matter which was not disclosed was of sufficient materiality to have affected the value or desirability of the property is . . . a question of fact . . . ." (*Shapiro v. Sutherland, supra,* 64 Cal.App.4th at p. 1544.) Here, the evidence revealed a triable issue of fact, as the existence of the two lawsuits was the very type of material information that a potential buyer could find seriously affected both the desirability and value of the property. (See *Kuhn v. Gottfried* (1951) 103 Cal.App.2d 80, 86 [229 P.2d 137] [litigation between seller and earlier potential buyer should have been disclosed as it "materially affect[ed] the desirability of the property"].) Moreover, Samuelson's disclosing the repairs made by the HOA in the absence of providing information about the context in which those repairs were made could be characterized as a partial disclosure, likewise creating a triable issue as to whether the balance of information concerning the litigation should have been disclosed. (See, e.g., *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 398 [102 Cal.Rptr.2d 125] [" 'where one does

---

[2] Under any circumstances, Samuelson's declaration concerning his subjective intent in declining to disclose the existence of the lawsuits would not have entitled him to summary judgment. (See *Pelletti v. Membrila* (1965) 234 Cal.App.2d 606, 611 [44 Cal.Rptr. 588] ["[W]hen conduct falls sufficiently below the acceptable norm to become grossly deficient, we characterize it as imbued with a bad intent which we call wilful misconduct. We attribute a malicious state of mind to the actor irrespective of any actual specific intent."].)

speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated' "].)

■ We reject Samuelson's contention that the only essential fact required to be disclosed was the existence of the water intrusion itself. Rather, case law holds that while the details of a lawsuit alleging defects in the property need not be disclosed, a seller's duty of disclosure encompasses disclosure of the existence of such a lawsuit. For example, in *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 410–411 [98 Cal.Rptr.2d 176], the court held that a seller satisfied its common law duty of disclosure when it informed a potential buyer that the homeowners association had filed a construction defect lawsuit and that the suit had been settled for $5.1 million shortly before the parties entered into escrow. The court held that once the seller had satisfied its duty of disclosure by informing the buyer of the existence of the litigation and its settlement, "the details of the suit were certainly within the diligent attention of the buyer, who could have examined the file in its entirety to learn all the details of the suit and its settlement." (*Id.* at p. 411.) Similarly, the level of disclosure found adequate in *Pagano v. Krohn, supra*, 60 Cal.App.4th 1, included disclosure of the existence of a lawsuit against the developer. The court noted that once the buyers had been made aware that the water intrusion problem resulted in litigation against the developer, the precise allegations of that complaint were within their diligent attention. (*Id.* at p. 10.)

■ Here, notwithstanding Samuelson's admitted knowledge of the developer lawsuit and the Westar lawsuit, he failed to disclose the existence of either action to appellants. Disclosure of the litigation would have enabled appellants to examine the details of those actions and evaluate their purchase in light of information including that the water intrusion had existed since the condominium was built, repairs throughout Jared Court were twice ineffective and the CHI repairs were made on a budget governed by the amount of the Westar lawsuit settlement. Without Samuelson's disclosure of the existence of the lawsuits, these matters were not within appellants' diligent attention. The materiality of the existence of the lawsuits was also shown by Calemine's declaration, in which he stated that appellants would not have purchased the condominium had they known about the prior lawsuits.

Accordingly, the evidence proffered on summary judgment did not support the trial court's ruling that there was sufficient disclosure. The evidence established a triable issue of fact regarding whether Samuelson was obligated to disclose the existence of the developer lawsuit and the Westar lawsuit as a material fact affecting the desirability and value of the condominium.

## DISPOSITION

The judgment is reversed and the matter is remanded. Appellants are entitled to their costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.