Filed 3/12/13  Rawat v. Newton CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| KIRAN RAWAT, as Trustee, etc., | C068071 |
| Plaintiff and Appellant, | (Super. Ct. No. 06AS03195) |
| v. | |
| ROBERT NEWTON et al., | |
| Defendants and Respondents. | |

In this action for breach of contract and fraud involving a 2001 purchase of seven-plus acres of vacant land for residential development, plaintiff the Krishna Living Trust (the Trust) appeals from a defense verdict following a jury trial.[1]

---

[1] We recognize that a trust is technically not a legal entity, but may act only through its trustee.  (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1062; Code Civ. Proc., § 369, subd. (a)(2); see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 2:6, p. 2-3.)  When we use the term "the Trust" in this opinion, we do so for the sake of simplicity, keeping this legal recognition in mind.

On appeal, the Trust contends the trial court erred (1) in refusing to instruct the jury as to the disclosure requirements of Health and Safety Code section 25359.7;[2] and (2) in admitting evidence involving unrelated lawsuits previously filed by Raghvendra Singh (who negotiated the purchase of the property, and who is a beneficiary of the Trust).

We disagree with the Trust's contentions, and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second time we have seen this case. In a prior unpublished opinion, we reversed a summary judgment in favor of defendants; we found that the Trust had standing to maintain this action and had met the statute of limitations, and that res judicata (based on a prior dismissed complaint in this matter) did not apply. As a consequence, we also reversed an order denying the Trust leave to file its first amended complaint (which is the operative complaint before us now).[3]

On September 26, 2001, Raghvendra ("Ron or Raj") Singh (hereafter Singh) executed a written "Land Purchase Agreement" (the Agreement) with defendants Robert Newton and Houston Tuel, the owners of defendant Coburg Properties (collectively, defendants), to buy four parcels of real property (the Property) for $275,000. The Property comprises seven-plus acres at the corner of 65th Expressway and Elder Creek Road in south Sacramento. Under the Agreement, defendants were to provide "all the reports and writings in their possession, and all information they possess related to [the] Property at the time of closing."

---

[2] Undesignated statutory references are to the Health and Safety Code.

[3] Appellant requested we take judicial notice of our prior opinion in case No. C059897, which we treated as a motion to incorporate and granted. (*Rawat v. Newton* (Feb. 23, 2010, C059897) [nonpub. opn.].)

2

Singh and his wife, Kiran Rawat, as trustees, created the Trust on October 15, 2001.

Two weeks after the Trust was created, on October 29, 2001, the Agreement was modified to provide, among other things, that defendants would provide "all the disclosures including the physical boundary of the [P]roperty to Buyer [Singh]." The Property was known to partly encompass a former landfill. As defendant Tuel explained in his deposition, he "told [Singh] you couldn't build on the dump site, but the rest of the land was buildable." Singh intended to build a residence for himself and his wife on the Property, and to residentially develop the remaining buildable part.

The terms of the $275,000 purchase were $100,000 down, with the balance covered by a promissory note, due December 31, 2003, and secured by the Property. As part of the purchase process, the Trust signed a promissory note to defendant Coburg Properties for the balance of the purchase price; and Coburg deeded the Property to the Trust. In 2004, defendant Coburg issued a deed of reconveyance to the Trust.

The pleadings and the trial evidence focused on the landfill's effect on the Property's development potential, and what defendants had or had not disclosed in that regard to Singh during the purchase process; the disclosure issues centered on the size of the landfill, and the environmental-based development restrictions on the Property. A series of four complaints—beginning in 2002 and culminating in 2010 with the first amended complaint (the complaint at trial)—ultimately alleged breach of contract (fraud-based), negligent misrepresentation, and fraud against defendants for failing to disclose that the Property had been governmentally monitored for environmental hazards, and for making false representations that all but a small portion of the Property was buildable. The Trust alleged damages based on the Property's purchase price, and on the $230,000 penalty levied against the Trust to environmentally remediate the Property. After the

close of evidence at trial, the trial court allowed the Trust to add a cause of action for "Real Estate Seller's Nondisclosure of Material Facts."

In a special verdict, the jury found that defendants did not breach the contract (because they did not fail to do something that the contract required them to do); did not commit negligent misrepresentation (because they did not make a false representation of an important fact to Singh, the Trust's agent); and did not commit fraud (because they did not actively conceal an important fact from Singh, and did not deceptively disclose some important facts to Singh while intentionally failing to disclose others). As for the nondisclosure cause of action added after the close of evidence, the jury found, in the special verdict, that defendants knew that certain information had not been disclosed; that defendants failed to disclose this information to Singh, the Trust's agent; but that Singh knew, or reasonably could have discovered, this information. Based on these special verdict findings, judgment was entered for defendants.

## DISCUSSION

### I. The Trial Court Did Not Err in Refusing to Instruct on the Disclosure Requirements of Section 25359.7

On the first day of trial, the Trust sought a jury instruction based on section 25359.7. That section, as pertinent, subjects a seller of "nonresidential real property" to liability for "actual damages" if the seller "knows, or has reasonable cause to believe, that any release of hazardous substance has come to be located on or beneath [the] real property [sold]," and fails to give written notice to the buyer. (§ 25359.7, subd. (a).)

Defendants objected to this instruction on two grounds: (1) the Property was zoned residential and so was its intended use—therefore, the Property was not subject to section 25359.7's disclosure requirement for nonresidential property; and (2) the operative pleading here, the Trust's first amended complaint, contained no cause of

4

action under the statute or any mention of the statute.  The trial court declined the instruction on ground No. (1).

" ' "[P]arties have the 'right to have the jury instructed as to the law applicable to all their theories of the case which [are] supported by the pleadings and the evidence, whether or not that evidence was considered persuasive by the trial court.' " ' " (*Ayala v. Arroyo Vista Family Health Center* (2008) 160 Cal.App.4th 1350, 1358.)  As we shall explain, the Trust's theory of the case based on section 25359.7 was not supported by the pleadings.  Consequently, the trial court did not err in refusing to instruct on that theory.

Preliminarily, we pause to note the Trust's argument that section 25359.7 applies because there is no residence on the Property and no one residing on the Property— hence, the Property is nonresidential, and its residential zoning does not change these "facts on the ground," if we may colloquially characterize the Trust's argument.  Section 25359.7 does not define the term "nonresidential real property."  But the scant case law and legal commentary on the statute suggest the term's coverage includes commercial property but not vacant land zoned for residential use.  (See *Sachs v. Exxon Co., U.S.A.* (1992) 9 Cal.App.4th 1491, 1497-1498 [the former similar section 25359.7 applied to contamination from an underground storage tank at a gas station, a commercial property]; Tracy, *Beyond* Caveat Emptor: *Disclosure to Buyers of Contaminated Land* (1991) 10 Stan. Envtl. L.J. 169, 199 ["Missing from existing California [statutory] laws are explicit disclosure requirements for vacant residential[ly] [zoned]  land and residential property with more than four dwelling units [for disclosure requirements regarding the sale of one to four dwelling units, see Civil Code section 1102 et seq.]."])  In light of these legal inklings, section 25359.7 would not apply to the vacant, residentially zoned land at issue here.  As we shall see, however, we need not resolve any residential versus nonresidential issue presented in this case because the Trust's pleadings do not support the giving of the section 25359.7 theory in any event.

As noted, the Trust's complaints, totaling four in this litigation, trace their lineage to 2002. These complaints have alleged *only* breach of contract, and the common law disclosure causes of action (as opposed to statutory law disclosure causes of action) of negligent misrepresentation, fraud, and nondisclosure of material facts. Over these many years, this matter proceeded on this legal basis. (See *Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161-162 [distinguishing between disclosure actions based on the common law and those based on statute].)

It was only when the first day of trial finally arrived that the Trust saw fit to have the trial court instruct on a new cause of action, a statutory disclosure cause of action based on section 25359.7. The Trust maintains that the pleadings and the evidence supported this statutory cause of action, based on nondisclosure of hazardous substance release involving the sale of a property that partially contained a landfill. We disagree for three reasons.

First, as noted, section 25359.7's disclosure requirement applies to "[a]ny owner of nonresidential real property who knows, or has reasonable cause to believe, that any *release* of *hazardous substance* has come to be located on or beneath th[e] real property[.]" (§ 25359.7, subd. (a), italics added.) Putting aside the definitional issue posed by the term "nonresidential real property," the terms "release" and "hazardous substance" have their own complex definitions in the law; for example, the "hazardous substance" definition is a lengthy one that incorporates many other statutory designations, listings and definitions. (§§ 25320, 25316; see also § 25321.) Thus, to defend against a section 25359.7 cause of action requires its own preparation, but the Trust's belated request for jury instruction on this unpleaded action did not give defendants any chance to prepare prior to trial. (See *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 912-913 [reversing the grant of a motion to amend a complaint at trial to add a new cause of action, because the defendants did not have the chance to conduct discovery or otherwise

6

prepare for trial on the action].) In short, a section 25359.7 cause of action is not one that should be sprung on someone.

Second, the Trust contends that section 25359.7 creates a cause of action for *strict liability*. This standard of liability stands in marked contrast to the fault-based, common law causes of action for negligent misrepresentation and fraud that the Trust had alleged in its pleadings for nearly a decade prior to the first day of trial. The Trust itself implicitly recognizes this is a "distinction with a difference" by arguing in effect that the jury's special verdict finding that sank the Trust's common law cause of action for nondisclosure of material facts (finding No. 4: that Singh knew, or could reasonably have discovered, the nondisclosed information) would not have been part of a section 25359.7 cause of action for strict liability. (Judicial Council of Cal., Civ. Jury Instns. (2013) Directions for Use to CACI No. 1910, p. 1037 [New Dec. 2009; this instruction, which the jury was given, sets forth the *common law* cause of action for a real estate seller's nondisclosure of material facts].)

Third, and finally, case law has drawn a legal line between real estate sales disclosure actions based on statute and those based on the common law. (*Calemine v. Samuelson, supra,* 171 Cal.App.4th at pp. 161-165.)

We conclude the trial court did not err in refusing to instruct the jury on what was effectively a new cause of action for section 25359.7 nondisclosure.

## II. The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Unrelated Lawsuits Previously Filed by Singh

The Trust filed two motions in limine, one seeking to exclude evidence of Singh's status as a vexatious litigant (based on unrelated lawsuits), and the other seeking to exclude evidence of those unrelated lawsuits. The trial court deferred ruling on those two motions until after Singh testified.

7

In direct examination, Singh testified that in late 2001 (i.e., when he negotiated the purchase of the Property), he "was very new to this country" and did not "know the laws, the rules, the regulations, anything."

After Singh testified on direct, the trial court ruled on the Trust's two in limine motions, as follows: (1) the court excluded evidence of Singh's status as a vexatious litigant, finding that evidence much more prejudicial and confusing than probative; and (2) the court ruled that Singh could be cross-examined "as to the facts associated with the number of lawsuits that he has filed, the various names that he has used with respect to those lawsuits, and any of the facts and circumstances surrounding those particular actions." The court found the probative value of this evidence "high" regarding Singh's credibility.

In cross-examination, Singh confirmed that when he negotiated the purchase of the Property at the end of 2001, he "didn't know [his] way around the laws and regulations of California and, in particular, Sacramento." Singh also denied, pursuant to the next cross-exam question, that by this time, he had already filed several lawsuits against several people in the Sacramento Superior Court, using aliases and acting in pro. per.; Singh explained that he filed those lawsuits in 2002, not before.

Later, in cross-examination, Singh acknowledged that he had filed two lawsuits in 2000 (unrelated to the present matter), three more in 2001, and at least five more in 2002, apparently all in Sacramento Superior Court, against various individuals and entities, using variations on his name and acting in pro. per.; and that he had improperly obtained default judgments in those lawsuits totaling several millions of dollars (apparently, the default judgments were overturned based on lack of service). (Singh had previously testified on direct examination that he came to this country and California in the mid-1980's for graduate school; that he was a civil engineer with a Ph.D. in engineering from

8

Ohio State University; and that he had purchased real estate investment properties prior to the purchase of the Property, including at auction.)

The Trust contends the trial court abused its discretion in admitting the evidence of the unrelated lawsuits, because this evidence should have been excluded, first, under Evidence Code sections 1101 and 787 and, second, under Evidence Code section 352. We find no abuse of discretion.

Taking the Trust's first contention first, Evidence Code sections 1101 and 787, as pertinent here, encapsulate the following principle of evidence law: Particular wrongful *acts* cannot be offered in evidence in a civil action to prove the bad character of a witness for honesty or veracity. (See 3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 297, p. 418.) However, this evidentiary exclusionary rule does not apply where the evidence is offered to show that the witness testified falsely concerning some portion of his testimony. (See 3 Witkin, at p. 419; *Leader v. State of California* (1986) 182 Cal.App.3d 1079, 1091.)

That is what happened here—the exclusionary rule of Evidence Code sections 1101 and 787 did not apply because the evidence of the unrelated lawsuits was properly admitted to impeach Singh. The evidence of Singh's unrelated lawsuits, particularly those filed in 2000 and 2001, were introduced to impeach his testimony (1) that he did not know his way around the laws and regulations of California and Sacramento at the time he negotiated the purchase of the Property, and (2) that he had *not* filed several lawsuits against several people in Sacramento Superior Court, using aliases, prior to the purchase of the Property. The trial court did not abuse its discretion in this regard.

That brings us to the Trust's second contention, Evidence Code section 352, under which evidence is to be excluded if its probative value is substantially outweighed by its unduly prejudicial or confusing nature. Again, we see no abuse of discretion on the trial court's part.

9

Singh was the pivotal figure for the Trust's case, as he had negotiated the Property's purchase, intending to develop it residentially. His credibility was key. A substantial part of this case concerned Singh's sophistication and credibility involving his ability to ascertain information from maps and from government agencies overseeing land development and monitoring environmental conditions. For example, Singh and defendants testified at opposite ends regarding the accuracy of a map of the landfill on the Property and whether Singh had been given the map prior to the sale or only shown it; regarding whether Singh ever received a 1988 report on the Property that Sacramento County's Air Pollution Control District had requested from the landowners, a report which led the County to conclude the Property could not be given an environmental "clean bill of health"; and regarding what defendants had told Singh about governmental actions and documentation regarding the Property's development potential. The unrelated lawsuits that Singh had maintained and obtained default judgments upon, acting in pro. per., showed a sophistication on Singh's part, and, as detailed above, impeached important parts of his testimony.

The Trust counters, with a certain logic, that if the label "vexatious litigant" is highly prejudicial, so too are all the facts and circumstances surrounding that designation. However, the government-ordered imposition of this pejorative *label*—i.e., its imposition by the judicial branch—creates a unique potential to unduly prejudice a lay juror by creating an emotional revulsion akin to imposing a Scarlet Letter. (*People v. Karis* (1988) 46 Cal.3d 612, 638 [Evidence Code section 352 applies to evidence that tends to evoke an emotional bias against a party and which has little to offer in determining the issues].) Furthermore, the trial court perceptively observed that allowing this label into evidence would entail an irrelevant "mini-trial" concerning the label's designation process and significance.

Finally, the Trust laments that "the purpose of eliciting this testimony about [the unrelated] lawsuits, which resulted in dismissals and which were obviously not meritorious, was to argue to the jury that *this* lawsuit was also not meritorious. Apparently it worked. And this is exactly why it should have been excluded." As we explained above, however, Singh opened the door to the evidence of the unrelated lawsuits through his own testimony. The trial court, prudently, deferred its in limine evidentiary ruling regarding the unrelated lawsuits to await Singh's testimony. Once Singh testified, the trial court did not abuse its discretion in allowing defendants to walk through the credibility door that Singh had opened.

We conclude the trial court did not abuse its discretion in admitting evidence of unrelated lawsuits previously filed by Singh.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                        BUTZ            , J.


We concur:


NICHOLSON , Acting P. J.


ROBIE , J.


11