Filed 8/16/22 Zhou v. SJO Investments CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YONG ZHOU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SJO INVESTMENTS, LLC,<br><br>    Defendant and Respondent. | B313152<br><br>(Los Angeles County<br>Super. Ct. No. BC687779) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert B. Broadbelt, Judge. Affirmed.

Grebow & Rubin and Arthur Grebow for Plaintiff and Appellant.

The Enochs Law Group, Jon Alan Enochs and Jeffrey D. Poindexter for Defendant and Respondent.

_____

Plaintiff and appellant Yong Zhou (Zhou) appeals from a judgment entered in favor of defendant and respondent SJO Investments, LLC (SJO) following the trial court's order sustaining a demurrer without leave to amend.

We affirm.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

*Original and first amended complaint*

On December 20, 2017, Zhou initiated this action against Stewart Title Guaranty Company[2] and SJO. As is relevant to the instant appeal, the complaint and first amended complaint alleged, inter alia, that "[o]n or about June 30, 2017, . . . SJO . . . entered into a written agreement pursuant to which SJO . . . agreed to purchase [certain real property (the property)] from Jose Daniel Santana" (Santana). Thereafter, "[o]n or about July 26, 2017, SJO . . . entered into an agreement pursuant to which SJO . . . agreed to assign its right to purchase and sell the Property to" Zhou.

The two pleadings further alleged that SJO "falsely represented" to Zhou that the property "was capable of being conveyed and was conveyed with marketable title."

---

[1]     "Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether [the] plaintiff has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

[2]     Zhou dismissed Stewart Title Guaranty Company with prejudice on April 9, 2019.

*Discovery*

The parties then apparently participated in some discovery. Again, as is relevant to the issues raised in this appeal, SJO asked Zhou in a special interrogatory to "[i]dentify, with specificity, the content of each and every verbal statement any representative of SJO . . . made to [you] that [you] contend was false." Zhou responded: "Mr. Chris Sumners [an SJO representative] informed me that this is a normal sale with distressed property. He never informed me that this property could not be sold or inhabited." Similarly, in response to a form interrogatory, Zhou stated that SJO "represented to [him] that the property being sold was capable of being conveyed and was conveyed with marketable title." Furthermore, Zhou stated that "[t]he property was not capable of being conveyed and was not conveyed with a marketable title." When asked if "any agreement alleged in the pleadings [is] ambiguous," Zhou responded, "No."

*Second amended complaint (SAC)*

The operative pleading is the SAC, which was filed after Zhou submitted responses to SJO's form and special interrogatories.

According to the SAC, on June 30, 2017, SJO acquired the property from Santana.[3] Less than a month later, Zhou and SJO entered into a written contract pursuant to which SJO agreed to sell, and Zhou agreed to purchase, the property. Escrow closed in a sales transaction on August 18, 2017.

At some point prior to the execution of the sales contract and continuing through the escrow period, SJO either became

---

[3] Santana was never named as a defendant in this lawsuit.

aware of or failed to use reasonable care to observe that certain repairs or alterations were completed by Santana without the requisite permits.  SJO also failed to use reasonable care to observe that the property was land-locked and uninhabitable.  And, prior to the close of escrow, SJO failed to provide Zhou with a transfer disclosure statement as required by Civil Code section 1102 et seq.[4]

Based upon these allegations, Zhou asserts claims for violation of section 1102 et seq., failure to disclose material facts, fraud, and negligent misrepresentation.

Attached to the SAC is a copy of the agreement to sell real estate between Zhou and SJO, although it is unsigned by SJO.  Page one provides that SJO "makes no guarantee or promise as to status or validity of permits, additions, or repairs.  SJO . . . did not perform or obtain any inspections on the property."  (Italics omitted.)  The agreement further provides, in relevant part:  "If Seller has the Property in escrow but has not yet closed on it, the parties agree that they will do an assignment of Seller's contract with the current owner, at Seller's request, so that the Buyer's total purchase price remains the same after the assignment fee is considered."  Moreover, "Seller agrees to deliver the premises at the time of closing in an as-is condition."  And, "Seller agrees to deliver a good and marketable or insurable owner's title to the property . . . and clear of all encumbrances except as herein set forth.  Purchaser agrees to notify Seller in writing of any defects in title as soon as reasonably possible."  Finally, the agreement provides that Zhou acknowledges that 'THE PREMISES WERE

---

[4]     All further statutory references are to the Civil Code unless otherwise indicated.

4

ACCEPTED WITHOUT [ANY] REPRESENTATION [AS TO] WARRANTY OF ANY KIND OR NATURE AND IN ITS PRESENT 'AS IS' CONDITION BASED SOLELY ON BUYER'S OWN INSPECTION."

*SJO's demurrer*

SJO demurred. It asserted that it had entered into a contract to purchase the property from Santana. Before escrow closed, SJO assigned its right to purchase the property to Zhou. The transaction went forward and Zhou obtained title to the property from Santana.

SJO then pointed out that Zhou "has now abandoned his marketability of title argument" and replaced it with allegations of violation of section 1102 et seq. and fraud. But, according to SJO, these allegations fail as a matter of law.

Regarding the first cause of action for violation of section 1102, SJO argued that that statute only "applies to any transfer by sale . . . [or] real property sales contract as defined in Section 2985 . . . of any single-family residential property." (§ 1102, subd. (a).) "A real property sales contract is an agreement in which one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and that does not require conveyance of title within one year from the date of formation of the contract." (§ 2985, subd. (a).) Because SJO did not convey title to Zhou, the contract at issue does not qualify as a "real property sales contract."

Regarding the second cause of action for failure to disclose material facts, SJO asserted that because it assigned its right to purchase the property from Santana and it did not sell the property itself, SJO could not be held liable for failure to disclose material facts.

5

Finally, SJO asserted that the third and fourth causes of action failed because they directly contradicted the contract attached to the SAC as well as Zhou's verified discovery responses.

In support of its demurrer, SJO requested judicial notice of (1) the grant deed dated August 7, 2017, showing Santana's conveyance of the property to Zhou; (2) excerpts of Zhou's responses to SJO's special interrogatories; and (3) excerpts of Zhou's responses to SJO's form interrogatories.

*Belated opposition*

Zhou belatedly filed an opposition to the demurrer, addressing only the first cause of action. He argued that SJO was required to issue a real estate disclosure statement because it transferred real property to him.

*Trial court order*

At the outset of its order, the trial granted SJO's request for judicial notice. It then proceeded to address the viability of each cause of action pled in the SAC.

Regarding the first and second causes of action, based upon the grant deed, it found that SJO did not sell nor transfer title to the property to Zhou, Santana did. Because SJO was not the seller, it did not owe Zhou a duty of disclosure.

Regarding the third and fourth causes of action, the trial court found that the SAC contradicted Zhou's verified responses to SJO's interrogatories. Thus, it could disregard the inconsistent allegations of the SAC.

Finally, because Zhou failed to show how he could amend the SAC to state claims against SJO, the trial court sustained the demurrer without leave to amend.

6

*Judgment; Appeal*

A judgment of dismissal was entered, and Zhou's timely appeal ensued.

## DISCUSSION

I. *Standards of review*

"We review de novo a trial court's sustaining of a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. [Citations.] We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context. [Citations.]" (*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 930.)

That said, we cannot ignore "[t]he [c]oncept of [t]ruthful [p]leading." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.) Courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed. . . . In this regard the court passing upon the question of the demurrer may look to . . . the plaintiff's answers to interrogatories." (*Ibid*.) "The court will take judicial notice of records such as . . . answers to interrogatories . . . when considering a demurrer, only where they contain statements of the plaintiff . . . which are inconsistent with the allegations of the pleading before the court." (*Id*. at pp. 604–605.)

"[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

7

"Although our review of [an order sustaining a demurrer] is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's] brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

"'[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]'" (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.) "The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

II. *Analysis*

Applying these legal principles, we conclude that the trial court properly sustained SJO's demurrer to the SAC without leave to amend.[5]

A. Section 1102

As set forth above, section 1102, subdivision (a), provides that "this article applies to any transfer by sale, exchange, real property sales contract as defined in Section 2985, lease with an

---

[5]     In his reply brief, Zhou argues that he has stated a claim against SJO because SJO did not transfer "good and marketable title" to the property to him. There are a host of problems with this argument. Although this theory was pled in the original and first amended complaints, it was omitted from the SAC. This argument was not raised below. (*Algeri v. Tonini* (1958) 159 Cal.App.2d 828, 832.) And, it is well-settled that we do not consider arguments first raised in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Although page 17 of the opening brief refers to that portion of the parties' agreement concerning marketable title, no argument is presented.

option to purchase, any other option to purchase, or ground lease coupled with improvements of any single-family residential property."

We agree with the trial court that section 1102 does not apply to SJO because SJO did not sell or transfer title to the property to Zhou. (§ 1039 ["Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another"].) The grant deed, of which the trial court took judicial notice, shows that Santana, not SJO, transferred title to the property Zhou on August 18, 2017. Although Zhou alleges that SJO acquired the property from Santana on June 30, 2017, that SJO agreed to sell the property to Zhou, and that escrow closed on August 18, 2017, the grant deed: (1) contradicts Zhou's contention that SJO transferred the property to Zhou, and (2) establishes that Santana, not SJO, was the seller of the property and the person who transferred the property to Zhou. Because SJO did not transfer the property to Zhou, Zhou's claim pursuant to section 1102 et seq. fails.

Urging us to conclude otherwise, Zhou directs us to the title of the agreement attached to the SAC: "AGREEMENT TO SELL REAL ESTATE." He also points out that the agreement obligated SJO to deliver a good and marketable title to the property. According to Zhou, this title and clause establish that SJO was the seller of the property. The problem for SJO is that the agreement itself does not unambiguously provide that SJO is selling the property to Zhou. In fact, it expressly anticipates a situation in which SJO does not have title to property that Zhou intends to purchase: "If [SJO] has the Property in escrow but has not yet closed on it, the parties agree that they will do an assignment of [the] Seller's contract with the current owner." In

9

other words, at best, we could deem the agreement to be ambiguous. But, as Zhou admitted in his verified response to SJO's form interrogatory No. 50.6, the agreement is not ambiguous. He offers us no reason to contradict him. In light of the grant deed, we cannot conclude that the agreement unambiguously shows that SJO was the seller of the property to Zhou.

Zhou further argues that SJO, as Santana's assignee, assumed Santana's obligation to comply with section 1102. This argument was not raised below and is therefore forfeited on appeal. (*In re C.M.* (2017) 15 Cal.App.5th 376, 385 ["A party may not assert theories on appeal which were not raised in the trial court"].)

Setting that procedural obstacle aside, as the parties agree, generally speaking, an assignee does not assume the obligations of a contract when accepting an assignment. (*Melchior v. New Lines Production, Inc.* (2003) 106 Cal.App.4th 779, 790 (*Melchior*).) As the parties also agree, section 1589 provides an exception to that general rule: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (§ 1589.)

Assuming without deciding that SJO voluntarily accepted the benefits of a transaction when it assigned its right to purchase the property from Santana to Zhou, Zhou has not demonstrated how SJO owes him a duty under section 1102. When SJO assigned its right to purchase the property from Santana, it never agreed to act as the seller of the property. In fact, as set forth above, SJO did not sell or otherwise transfer the property to Zhou—Santana did. Thus, SJO did not assume

10

Santana's obligation to make any statutory disclosures. (*Melchior*, *supra*, 106 Cal.App.4th at p. 788 [a party who accepts the benefits of an assigned agreement is bound by all of the "obligations arising under" that agreement].)

B. <u>Failure to Disclose Material Facts</u>

""""[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.""" (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.) "A real estate seller has both a common law and statutory duty of disclosure." (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161.)

On appeal, Zhou argues that he properly pled a cause of action for failure to disclose. But, he failed to raise this argument below. On this ground alone, we could affirm the trial court's order. (*In re C.M.*, *supra*, 15 Cal.App.5th at p. 385.)

Regardless, Zhou has not demonstrated how this cause of action can proceed against SJO. Zhou alleges that SJO failed to disclose material facts to him. But, as set forth above, SJO was not the seller of the property, Santana was. Because SJO was not the seller of the property, it did not have a duty of disclosure to Zhou. It follows that this cause of action fails.

In his opening brief, Zhou discusses the law concerning fiduciaries and their obligations. But he neglects to argue or

11

demonstrate how SJO was a fiduciary or otherwise owed him any duties. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [the appellant bears the burden of supporting a point with reasoned argument].) Thus, we reject any suggestion by Zhou that SJO was his fiduciary who owed him a duty to disclose all material facts.

C. <u>Fraud – Intentional Misrepresentation</u>

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.)

On appeal, Zhou argues that he properly pled a cause of action for failure to disclose. But again, he failed to raise this argument below. On this ground alone, we could affirm the trial court's order. (*In re C.M.*, *supra*, 15 Cal.App.5th at p. 385.)

Regardless, as the trial court properly found, Zhou did not plead an adequate claim for intentional misrepresentation. According to the SAC, SJO falsely represented to Zhou that Santana had acquired all of the necessary permits for the additions and alterations to the property. That allegation contradicts Zhou's verified answer to SJO's special interrogatory No. 1.

As set forth above, SJO asked Zhou to specifically identify "each and every" false statement made by SJO representatives to him. The only false statement he identified was that the sale was a "normal" sale with distressed property. Zhou never attested that SJO falsely represented that Santana had acquired all necessary permits. We need not accept as true Zhou's allegations in the SAC that conflict with his verified answers to

12

interrogatories. (*Del E. Webb Corp. v. Structural Materials Co.*, *supra*, 123 Cal.App.3d at pp. 604–605.)

Urging us to conclude otherwise, Zhou points out that this interrogatory related to allegations of prior pleadings, not the SAC. We are not convinced. Nothing in the interrogatory itself limited the request for information to the allegations of a specific pleading. Rather, the interrogatory generally asked for information in support of Zhou's fraud claim.

In any event, Zhou could have amended his interrogatory response. (Code Civ. Proc., § 2030.310, subd. (a) ["Without leave of court, a party may serve an amended answer to any interrogatory that contains information subsequently discovered, inadvertently omitted, or mistakenly stated in the initial interrogatory"].) He never did.

Zhou further argues that his responses to other interrogatories put SJO on notice that his claim was based upon the false representation that Santana had all the requisite permits for the property. But, Zhou offers no citation to the appellate record for these alleged responses, and we could not locate them. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [appellate court is not required to make an independent, unassisted search of the appellate record].)

D. Negligent Misrepresentation

"The essential elements of a count for negligent misrepresentation are the same [as those for intentional misrepresentation] except that it does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." (*Chapman v. Skype Inc.*, *supra*, 220 Cal.App.4th at p. 231.)

For the same reasons discussed in connection with Zhou's fraud cause of action, this claim fails as well.

E. Leave to Amend

The trial court denied Zhou's request for leave to amend. On appeal, Zhou asks for leave to amend. "To satisfy [his burden on appeal of proving that an amendment would cure any pleading defects], a plaintiff 'must show in what manner he [or she] can amend his [or her] complaint and how that amendment will change the legal effect of the pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for the amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusory. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

Here, Zhou offers nothing more than a generic request for leave to amend the second, third, and fourth causes of action. He fails to argue or explain how he can amend the pleading to cure its defects. Having failed to meet his burden on appeal, his request for leave to amend is denied.

## DISPOSITION

The judgment is affirmed.  SJO is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ