*5
 
 Opinion
 

 PRAGER, J.
 
 *
 

 Plaintiffs Raymond Pagano and Lillian Pagano (the Paganos), purchasers of the subject condominium, sued the seller and the real estate brokers and agents involved in the sale transaction on various theories arising out of the defendants’ alleged nondisclosure that the property was afflicted with a severe water intrusion problem affecting the entire condominium complex. The Paganos appeal a summary judgment entered in favor of all defendants. The various issues on appeal articulated by the Paganos boil down to whether there are triable issues of fact as to whether the defendants breached their respective duties of disclosure owed to the Paganos. We affirm.
 

 Factual and Procedural Background
 

 Defendant Helga Krohn (Krohn) listed her condominium in Black Horse Ranch (Blackhorse) for sale with defendant Peggy Chodorow (Chodorow), a real estate broker affiliated with defendant Coldwell Banker Residential Real Estate Corporation (Coldwell). On April 24, 1993, Krohn accepted an offer from Raymond Pagano (Pagano) to purchase the condominium for $320,000.
 
 [1]
 

 On April 26, Krohn prepared a real estate disclosure statement representing she was unaware of any flooding, drainage or grading problems. Chodorow noted on that statement: “I know nothing to contradict the owner’s statement above. This development is on leased land. Some units have experienced moisture intrusion but not this unit according to owner.” Around that time, either Chodorow or Krohn told defendant Jim Lawson (Lawson), the Paganos’ agent, that a couple of units in the development had water intrusion problems but Krohn’s unit did not. Before April 26, Lawson inspected Krohn’s condominium looking for cracks, stress marks and water spots. On the April 26 real estate disclosure statement Lawson noted: “This home seems to be in good shape. I recommend Buyer have the property inspected prior to the close of escrow.” On April 27 the Paganos canceled the sale transaction due to family problems.
 

 
 *6
 
 On May 7, 1993, the board of directors of the Blackhorse Homeowners Association (Association) wrote a letter to the homeowners to give them an “update on the water intrusion problem at Blackhorse.” The letter informed the homeowners that the Association had filed a lawsuit against the developer. The letter stated that as a result of negotiations between the developer and the two previous boards, the developer’s “spokespeople talked about putting in gutters and downspouts that would be tied into the drainage system, around each unit as a way of directing rainwater away from the houses and foundations.” The letter went on to report, however, that due to a dispute between the developer and its insurance carrier, the developer was unable to sign an agreement to toll the running of the statute of limitations on the Association’s claims against it and therefore it was necessary to file the lawsuit.
 

 On May 29, 1993, Pagano made, and Krohn accepted, a second offer to purchase the condominium for $315,000, which was $5,000 less than his first accepted offer. Before Pagano made that offer, Lawson forwarded him a copy of the Association’s May 7 letter regarding the lawsuit against the developer. Lawson also read the letter to Pagano over the telephone. Pagano’s second offer contained the statement: “Buyer is aware of the ongoing lawsuit and the offer reflects that knowledge.”
 

 Before escrow closed the Paganos hired California Home Inspection, Inc., to inspect the condominium. The Paganos were present during the inspection, which lasted about four hours. Neither Pagano nor the professional inspector saw any sign of water intrusion in the condominium. The inspector recommended the installation of gutters and downspouts to help with site drainage.
 

 Escrow closed and the Paganos moved into the condominium in June 1993. The Paganos first discovered evidence of water intrusion when an engineer supervising the installation of a sound system in the condominium pointed out dry rot and dampness in an area from which carpet and baseboard had been removed.
 

 In November 1993 the Paganos filed the instant action, naming as defendants the Krohns, Chodorow and Coldwell. The Paganos later amended their complaint to substitute Lawson and Century 21 Village Realty (Century 21) in place of Doe defendants 1 and 2, respectively. The complaint includes causes of action for rescission, fraud, money had and received, breach of contract, negligent misrepresentation, violation of real estate brokers’ statutory duty, concealment and negligent infliction of mental distress.
 

 
 *7
 
 All of the named defendants answered the complaint and moved for summary judgment against the Paganos.
 
 [2]
 
 The court granted summary judgment as to each defendant, ruling: “The declaration of Helga Krohn . . . states that she had no personal knowledge nor was she aware of any conditions of significance concerning her property other than those that were actually disclosed. The [real estate purchase contract] indicates that the plaintiff had knowledge of the ongoing lawsuit and lowered his purchase price accordingly. Furthermore, the inspection report. . . indicates that the inspector hired by plaintiff recommended the installation of gutters and downspouts to help alleviate the problems of the property.
 

 “Plaintiff admits that Jim Lawson discussed [the Association’s letter informing the homeowners that a lawsuit against the developer had been filed] prior to the close of escrow. The ruling is also based on the real estate purchase contract and receipt for deposit, the inspection report and the disclosure statement ....[¶]] As a matter of law, the court finds that the real estate brokers are only required to disclose problems with a unit that could have been discovered through a visual inspection.”
 

 Discussion
 

 “ ‘Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. . . . First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent’s pleading. . . . [QQ Second [], we determine whether the moving party’s showing has established facts which negate the opponent’s claim and justify a judgment in movant’s favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . . Counteraffidavits and declarations need not prove the opposition’s case; they suffice if they disclose the existence of a triable issue.’ [Citations.]”
 
 (Carleton
 
 v.
 
 Tortosa
 
 (1993) 14 Cal.App.4th 745, 752-753 [17 Cal.Rptr.2d 734].)
 

 I.
 
 Seller’s Agent
 

 As to Chodorow and Coldwell, agents for the seller in the subject transaction, the issues framed by the Paganos’ complaint are (1) whether
 
 *8
 
 Chodorow falsely represented that the subject property was free of a water intrusion problem and/or concealed the existence of a water intrusion problem; (2) whether Chodorow breached her duty under Civil Code
 
 [3]
 
 section 2079 to conduct a reasonably competent and diligent inspection and disclose all material facts such an investigation would reveal;
 
 [4]
 
 and (3) whether Chodorow breached her duty to disclose all material facts within her knowledge.
 

 It is undisputed that before Pagano made his second offer to purchase the subject property, Chodorow disclosed to him that some units in the development had suffered moisture intrusion. There is no evidence that Krohn’s unit was showing any sign of moisture intrusion at the time Chodorow made that disclosure or that Chodorow had any knowledge of a moisture intrusion problem at Krohn’s unit. Thus, the issue as to Chodorow is whether she owed a duty to disclose additional facts about the water intrusion problem in the development generally and the resulting litigation against the developer. We conclude the disclosures Chodorow made to Pagano were sufficient.
 

 In addition to Chodorow’s disclosure that there was moisture intrusion in some of the units at Blackhorse, Pagano was made aware, before he made his second offer, of the contents of the letter from the board of directors of the Association giving notice of the Association’s lawsuit against the developer. The opening sentence of that letter stated its purpose was to give the homeowners an “update on
 
 the water intrusion problem at
 
 Blackhorse.” (Italics added.) Although the letter may have been overly optimistic in suggesting the lawsuit could be resolved by the installation of gutters and downspouts around the units to direct rainwater away from the houses and foundations, it clearly informed the reader that the developer was being sued because of a water intrusion problem at Blackhorse. Thus, before Pagano made his second offer on the property, he was apprised of the essential facts concerning water intrusion at Blackhorse—i.e., that there was a water intrusion problem in the development which affected some of the units and resulted in litigation against the developer.
 

 The Paganos argue that Chodorow should have disclosed the following specific facts within her knowledge prior to the purchase of Krohn’s unit: (1) as a homeowner in Blackhorse she received 31 documents such as newsletters and minutes of Association’s meetings chronicling the progression of
 
 *9
 
 the water intrusion problems at Blackhorse; (2) she was aware of severe water intrusion problems experienced by the owners of three particular units; and (3) she had read the Association’s complaint against the developer.
 
 [5]
 

 Disclosure of these additional facts would have served only as elaboration on the basic disclosed fact that there was a water intrusion problem in the development affecting some of the units and resulting in a lawsuit against the developer. There is no evidence in the record that at the time the Paganos purchased their unit Chodorow had reason to believe the problem would affect every unit in the development. None of the Association’s newsletters or minutes in the record indicates that all or even most of the 121 units at Blackhorse were directly affected by the water intrusion problem.
 
 [6]
 
 Chodorow was not obligated to disclose the details of water intrusion affecting other specific units in the development absent some reason to believe the Paganos’ unit would likely suffer the same fate.
 
 [7]
 

 The Association’s complaint against the developer does not add significant information to the basic facts disclosed to Pagano. The complaint alleges generally that various construction errors resulted “in water and moisture intrusion into the condominiums . . . .” At the time the complaint was filed Pagano already knew there was moisture intrusion into some of the condominiums. The complaint’s reference to “the condominiums” could not reasonably be construed as meaning
 
 all
 
 of the condominiums because most of the condominiums were unaffected by water intrusion at the time the complaint was filed.
 

 
 *10
 
 In short, the essential facts about the water intrusion problem were disclosed to Pagano before he made his second offer to buy the subject property. Chodorow was not duty bound to elaborate on those facts by providing further details regarding the various manifestations of water intrusion throughout the development or the precise allegations in the Association’s complaint against the developer.
 

 Section 2079.5 provides in relevant part: “Nothing in this article relieves a buyer or prospective buyer of the duty to exercise reasonable care to protect himself or herself, including those facts which are known to or within the diligent attention and observation of the buyer or prospective buyer.” The Paganos knew there was water intrusion at Blackhorse which had resulted in litigation against the developer. The additional details they fault Chodorow for not disclosing, including the content of the Association’s complaint, were within their own diligent attention.
 

 The court did not err in granting summary judgment in favor of Chodorow and Coldwell.
 

 II.
 
 The Seller
 

 The Paganos contend there is a triable issue of fact as to whether Krohn failed to disclose material facts within her knowledge. Specifically, the Paganos contend Krohn had knowledge of the general water intrusion problem through communications from the Association and she knew her particular unit had exhibited evidence of moisture intrusion problems in the past in the form of efflorescence on the concrete in her garage and algae or moss on the exterior wall of the garage.
 
 [8]
 
 The Paganos also contend the knowledge of Krohn’s agent Chodorow is imputed to her.
 

 Our analysis regarding Chodorow’s knowledge and duty to disclose the general water intrusion problem at Blackhorse applies equally to Krohn. The Paganos were sufficiently informed of the existence of the general problem and resulting litigation. Since there is no evidence that Krohn’s unit showed signs of water intrusion at the time the Paganos purchased it, the only issue as to Krohn is whether she was duty bound to disclose her observations of efflorescence and algae well over a year before the sale.
 

 
 *11
 
 We conclude the past occurrence of algae or efflorescence at Krohn’s unit was not a material fact Krohn was required to disclose because there is no evidence the algae or efflorescence was related to the general water intrusion problem at Blackhorse. In a declaration in support of her summary judgment motion, Krohn stated the algae and efflorescence disappeared after certain sprinklers were adjusted so as not to spray on the affected areas, and the problem had been remedied long before she sold the property to the Paganos. Pagano testified in his deposition that he inspected the garage and noticed no sign of efflorescence at the time he purchased the property.
 

 Because Pagano was apprised of the general water intrusion problem at Blackhorse and there is no evidence Krohn failed to disclose any material fact within her knowledge concerning her particular unit, the court properly granted summary judgment in favor of the Krohns.
 

 III.
 
 Buyers’ Agent
 

 The Paganos contend Lawson breached his fiduciary duty to them by failing to obtain a copy of the Association’s complaint against the developer or otherwise verify the information he received from Chodorow and Krohn and passed along to the Paganos about the lawsuit. It is undisputed Lawson advised Pagano of the existence of the Association’s lawsuit. However, the Paganos contend Lawson misrepresented the nature of the lawsuit by telling them it was filed only to prevent the statute of limitations from running and only involved the need for gutters and downspouts, which the developer had agreed to provide.
 

 When the buyer’s agent transmits material information from the seller or others to the buyer, the agent must either verify the information or disclose to the buyer that it has not been verified.
 
 (Salahutdin
 
 v.
 
 Valley of California,
 
 Inc. (1994) 24 Cal.App.4th 555, 562-563 [29 Cal.Rptr.2d 463].) Accordingly, a buyer’s agent is not required to verify information received from the seller and passed on to the buyer if the buyer understands the agent is merely passing on unverified information.
 
 (Id.
 
 at p. 563.)
 

 In his deposition, Pagano testified he knew Lawson was passing along information he had received from Chodorow and Krohn when he told Pagano the lawsuit was about gutters and downspouts. Pagano also testified he had no knowledge that Lawson did any further investigation into the lawsuit or knew in May 1993 that the lawsuit concerned a greater problem than gutters and rainspouts. Since Pagano knew Lawson was merely passing on unverified information from the seller and her agent, Lawson was not required to verify that information.
 

 
 *12
 
 In any event, the actual content of the Association’s complaint against the developer was a matter of public record within the Paganos’ diligent attention. Therefore, the Paganos had their own duty to ascertain the precise nature and scope of the Association’s claims against the developer if these were material to their decision to pinchase Krohn’s unit. (§ 2079.5.)
 

 The Paganos also contend Lawson breached his duty by failing to disclose his general knowledge that a lawsuit by a homeowners’ association against a developer has a detrimental effect on unit sales prices. Conclusions as to how the legal or practical ramifications of disclosed facts adversely impact value are not “facts” subject to an agent’s duty of disclosure.
 
 (Sweat
 
 v.
 
 Hollister
 
 (1995) 37 Cal.App.4th 603, 608-609 [43 Cal.Rptr.2d 399].) Lawson fulfilled his disclosure duty to the Paganos by informing them of the existence of the lawsuit and the fact it arose from water intrusion problems at Blackhorse. “The legal and practical effects of this state of affairs do not rise to the status of a fact—they are the conclusions as to value resulting from the [disclosed facts].”
 
 (Id.
 
 at p. 608.) Lawson had no duty to tell the Paganos the Association’s lawsuit might adversely affect the value of their unit.
 

 The court did not err in granting summary judgment in favor of Lawson and Century 21.
 

 Disposition
 

 The judgment is affirmed.
 

 Kremer, P. J., and Huffman, J., concurred.
 

 *
 

 Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
 

 [1]
 

 Although the documentary evidence for the most part indicates the sale transaction was a two-party transaction between Krohn and Pagano, the Paganos explain in their opening brief that title to the condominium actually passed from Krohn and Marina I. Krohn, cotrustees of trust A of the Krohn Family Trust dated February 20, 1980 (the Krohns),. to the Paganos, cotrustees under a declaration of trust dated August 30, 1982.
 

 [2]
 

 The various defendants filed cross-complaints for indemnity which are not relevant to this appeal.
 

 [3]
 

 All further statutory references are to the Civil Code.
 

 [4]
 

 Section 2079 codifies the duties of a real estate broker or salesperson to inspect property offered for sale and disclose material facts about the property to a prospective buyer. Specifically, a real estate broker or salesperson involved in a purchase/sale transaction has a duty “to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal. . . .” (§ 2079.)
 

 [5]
 

 The Paganos also point to statements attributed to Chodorow in the minutes of the July 27 meeting, which occurred
 
 after
 
 the Paganos purchased their unit. Chodorow stated the real estate community was aware of the water intrusion problem at Blackhorse and the law required that the problem be disclosed to any prospective buyer. However, Chodorow
 
 did
 
 disclose the existence of a water intrusion problem at Blackhorse to Pagano.
 

 [6]
 

 There is no evidence in the record that the water intrusion problem
 
 ever
 
 physically manifested in a majority of the units at Blackhorse. The minutes of the Association’s meeting on July 27, 1993, state: “Some homeowners who have no moisture intrusion problems within their units felt those homeowners with problems should correct the problems themselves.’’ One homeowner “felt the association should drop the lawsuit and let those homeowners whose units had moisture intrusion problems sue on their own.”
 

 The Paganos cite a 1991 report by Nasland Engineering regarding water intrusion into several units at Blackhorse and tentatively concluding: “The [water intrusion] problem is general in nature, not confined to a single home or row of homes.” However, this statement did not give rise to a duty to warn prospective buyers that water would inevitably intrude into all or most of the units in Blackhorse.
 

 [7]
 

 Section 2079.3 was amended in 1994 to clarify that if the property being sold is a condominium, the inspection to be performed under section 2079 “does not include an inspection of more than the unit offered for sale, if the seller or broker complies with the provisions of Section 1368.” (§ 2079.3.) Section 1368 requires that a prospective buyer be provided certain documents such as a copy of the governing laws of the development and various documents relating to assessments.
 

 [8]
 

 On a questionnaire sent to the Blackhorse homeowners in early 1992 regarding moisture intrusion problems, Krohn indicated she had noticed a white residue on an interior concrete wall of her garage and algae or moss on the exterior side of that wall. The parties use the term “efflorescence” to refer to the white residue on the interior wall. The relevant dictionary definition of “effloresce” is “to become incrusted or covered with crystals of salt or the like through evaporation or chemical change.” (Random House Diet, of English Language (unabridged ed. 1993) p. 622.)