Filed 9/10/21  Goodfield v. Frahm CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRUCE GOODFIELD, et al., | |
| Plaintiffs and Appellants, | G059551 |
| v. | (Super. Ct. No. 30-2019-01050047) |
| DANIEL A. FRAHM, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Reversed.

Wright, Finlay & Zak, Jonathan D. Fink and Charles C. McKenna for Plaintiffs and Appellants.

Van Ripper Law and David A. Van Riper for Defendants and Respondents.

This case concerns the disclosure obligations of a residential property seller. Plaintiffs Bruce Goodfield and Kerry Goodfield (buyers) appeal from a summary judgment granted in favor of defendants Daniel A. Frahm and Claire Frahm (sellers). The trial court concluded sellers' disclosure of prior pool crack repairs was sufficient, as a matter of law, to satisfy their duty to disclose all pool-related material facts affecting the value or desirability of the property. Buyers contend the court erred because the evidence demonstrated triable issues of material fact as to whether sellers failed to disclose other pool-related material facts known only to them. They point to documents produced by sellers during discovery, which allegedly notified them for the first time of more extensive repair work previously performed on the pool, an ongoing pool leak, and other serious pool-related problems. We agree the grant of summary judgment to defendants was erroneous. The record is rife with triable issues of material fact, and, separately, sellers failed to meet their initial summary judgment burden regarding buyers' cause of action for statutory disclosure violations. Accordingly, the judgment is reversed.

**FACTS**

Sellers listed their single-family home (property) for sale. It had a backyard pool and spa. Buyers offered to buy the property, sellers accepted the offer, and the parties opened escrow. Sellers were represented by an agent (sellers' agent); Kerry Goodfield,[1] a licensed real estate agent, acted as buyers' agent.

While in escrow, Kerry performed a visual inspection of the property pursuant to state law and prepared a report. With respect to the pool, the report noted there were "cracks in [the] pool[.]" It also stated the backyard wall was "tilt[ed] to [the] back slope[.]"

Less than one week later, sellers' agent performed a visual inspection of the property pursuant to state law and prepared a report. The only mention of the pool in the

[1] When the context requires, we use the parties' first names only for the sake of clarity; no disrespect is intended.

2

report was a recommendation for "buyer to satisfy themselves as to all plumbing and pool repairs." Separately, the report advised the buyers "to have the home and grounds inspected by a [g]eotechnical [e]ngineer."

On the same day sellers' agent inspected the property, Bruce received from sellers a copy of a written Seller Property Questionnaire. The form's stated purpose was "to tell the [b]uyer about **known material or significant items** affecting the value or desirability of the [p]roperty and help to eliminate misunderstandings about the condition of the [p]roperty."

In a section titled "Landscaping, Pool and Spa," sellers checked a box stating they were aware of "[p]ast or present defects, leaks, cracks, repairs or other problems with the . . . pool [or] spa . . . including any ancillary equipment, . . . even if repaired." Immediately thereafter in an "explanation" area, sellers handwrote the following: "POOL HEATER REPLACED MORE THAN 5 YEARS AGO[;] POOL CRACKS PROMPTLY REPAIRED[.]"

Within a different section of the Seller Property Questionnaire, titled "Repairs and Alterations," sellers checked a box indicating they were aware of "alterations, modifications, replacements, improvements, remodeling or material repairs on the [p]roperty[.]" In the explanation area directly below, they handwrote the following: "POOL CRACKS & PLUMBING REPAIRS[.]"

Elsewhere on the Seller Property Questionnaire, sellers checked a box specifying they were aware of "[r]eports, inspections, disclosures, warranties, maintenance recommendations, estimates, studies, surveys or other documents pertaining to (i) the condition or repair of the [p]roperty or any improvement on [the] [p]roperty in the past, now or proposed; or (ii) easements, encroachments or boundary disputes affecting the [p]ropety whether oral or in writing and whether or not provided to the [s]eller[.]" The form recited that if this box was marked "yes," then any such documents in sellers' possession would be provided to buyers.

3

Sellers also represented to buyers on the Seller Property Questionnaire that sellers were not aware of (1) any "[m]aterial facts or defects affecting the [p]roperty not otherwise disclosed to [b]uyer"; or (2) "[a]ny past or present known material facts or other significant items affecting the value or desirability of the [p]roperty not otherwise disclosed to [b]uyer[.]"

Over the course of the following month, buyers posed to sellers two questions concerning the pool. The first question asked, "Regarding pool cracks: can you advise when this was repaired and what company did the work?" Sellers provided the name of the company and said it "performed the most recent repairs within the last 1 or 2 years, as well as other repairs going back as far as 10 years." Appearing to believe sellers' first response only provided information concerning leak detection for the pool, buyers followed up with a second question asking for the name of whomever filled the cracks in the pool. Sellers responded by providing an invoice for the then most recent pool crack repair ($175) and leak detection ($300), both of which were performed by the same company roughly three months prior.

Buyers reached out to the company who performed the pool crack repairs and leak detection, attempting to get copies of relevant documents. The company indicated it did not have any information in its files concerning the subject pool. Neither buyers nor buyers' agent tried to get the relevant documents from sellers prior to close of escrow.

After escrow closed, buyers learned from a then short-term tenant on the property that the pool had been losing water and the water level was decreasing "very, very quickly." The tenant told them sellers' agent reassured her buyers were aware of the pool leak.

Buyers then hired the company who did the pool leak detection and crack repair work to inspect the pool. Upon arrival, the inspector told Kerry he had been to the property "'many times'" and performed numerous repairs.

4

According to buyers, other companies also came out to inspect the pool and provide recommendations. They informed buyers the pool problems were not fixable and the pool had to be replaced. Buyers obtained replacement cost estimates from five different companies, ranging from approximately $191,000 to $264,000.

Buyers sued sellers, alleging breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentation and concealment, negligent misrepresentation, failure to make required statutory disclosures and general negligence. Each cause of action was grounded in sellers' purported failure to disclose the true nature and extent of the pool-related problems and prior repairs.

Sellers moved for summary judgment, or in the alternative, summary adjudication on each cause of action. Their sole contention was buyers could not prevail on any of their claims, as a matter of law, because sellers did not fail to disclose any material fact.

Buyers opposed the motion and argued there were multiple triable issues of material fact concerning whether sellers satisfied their disclosure obligations. Among other evidence, buyers submitted the documents which they first became aware of when they received sellers' discovery responses. The documents included invoices, proposals and reports from various companies who had inspected and/or performed work on the pool for sellers over the course of a decade.

Some of the invoices concerned leak detection and crack patching, while other invoices reflected replastering the pool and spa, and saw cutting and insertion of steel rebar in the pool.

One of the proposals, dated a few months prior to close of escrow, concerned geotechnical services for a pool and spa repair and remodel contemplated by sellers. At the outset, the proposal stated: "We understand that your existing swimming pool has experienced distress. Distress is in the form of pool shell rotation and cracks in the plaster. It is also your suspicion that the pool may be leaking water. The cause of the

5

distress is unknown, but is likely related to slope-creep effects and possibly fill settlement." It went on to propose services to determine the subsurface conditions under the pool and original design construction so proper pool repair design recommendations could be made.

The documents also included a series of e-mails exchanged between Daniel and a pool engineer. The e-mails, dated a few months prior to the opening of escrow with buyers, indicated sellers were "contemplating a 'pool within a pool' repair" which might necessitate installation of two new footings to supplement one footing sellers had installed during a prior repair. Daniel also explained he was aware (1) their property had "slope creep," having been told so "on several occasions, (2) the pool water line was "probably at least 1/2[ inch] out of alignment[,]" and (3) there was "some separation of deck from pool." Sellers stated goal was "to reinforce the pool and prevent further creep, as recommended [by another company.]"

Kerry submitted a declaration in support of buyers' opposition to the summary judgment motion which explained that prior to the close of escrow, she was not aware of the saw cut and rebar work or the added footing and replastering work performed on the pool. Unlike the crack repairs which were visible to her when standing next to the pool, the other repair work was not visible. She indicated buyers would not have purchased the property had sellers provided all the pool-related disclosures. She elsewhere stated they most likely would have canceled escrow and not gone forward with the purchase, but in the very least, they would have negotiated for a substantial price reduction.

Following a hearing on sellers' motion, the trial court granted summary judgment in their favor. Citing *Pagano v. Krohn* 60 Cal.App.4th 1 (*Pagano*), it concluded any additional information about past pool repairs would simply have been an elaboration of details concerning the disclosures made by sellers, meaning as a matter of law sellers had met their disclosure obligations.

6

Buyers timely appealed following entry of judgment.

## DISCUSSION

Buyers contend the trial court erred in granting summary judgment in favor of sellers because there were triable issues of material fact concerning whether sellers satisfied their disclosure obligations in relation to the pool.  We agree.

### A.  Summary judgment principles and standard of review

"[A]ny party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his favor . . . ."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  "The court must 'grant[ ]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' . . . and that the 'moving party is entitled to a judgment as a matter of law.'"  (*Ibid.*, citations omitted.)  "'The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution.'"  (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 708.)

The party opposing summary judgment may defeat the motion by demonstrating there is one or more triable issues of material fact.  (*Aguilar, supra*, 25 Cal.4th at p. 849.)  He or she "'may not rely upon the mere allegations or denials' of [the] 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to [the challenged] cause of action . . . .'"  (*Ibid.*)

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.'  [Citation.] . . . Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion.  [Citation.]"  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  Credibility determinations and the weighing of evidence are not

proper matters. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 880; *ARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065.) Similarly, there is to be no resolving of fact issues. (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161 (*Calemine*).)

"[T]he trial court's stated reasons for granting summary judgment 'are not binding on us because we review its ruling, not its rationale.'" (*Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153, 157.) We affirm the summary judgment if correct on any of the grounds asserted in the moving party's motion. (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 747-748.)

## B. Disclosure obligations of a seller of real property

Sellers' summary judgment motion challenged all of buyers' claims on one basis: as a matter of law, buyers could not establish sellers failed to comply with their disclosure obligations. Because the trial court apparently agreed, we focus our analysis on the law relating to a real estate seller's duty of disclosure. "'A real estate seller has both a common law and statutory duty of disclosure.'" (*RSB Vineyards, LLC v. Orsi* (2017) 15 Cal.App.5th 1089, 1097 (*RSB Vineyards*).) We will discuss each in turn.

### 1. Common law disclosure duties

""""In the context of a real estate transaction, '[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]' [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.]" . . . Where a seller fails to disclose a material fact, he may be subject to liability "for mere nondisclosure since his conduct in the transaction *amounts to a*

8

*representation of the nonexistence of the facts which he has failed to disclose* [citation]."
[Citation.]'" (*RSB Vineyards, supra*, 15 Cal.App.5th at p. 1097.)

It is undisputed sellers disclosed prior pool crack repairs. Buyers contend there was more that should have been disclosed. They argue sellers were obligated to tell them about (1) the more extensive work previously performed on the pool, including installation of a footing, saw cutting and insertion of steel rebar, and replastering on more than one occasion; (2) the pool shell rotation and slope creep; and (3) the then existing pool leak.

Sellers do not deny knowledge of these additional matters, but instead argue they were not obligated to disclose them. Relying on *Pagano*, they claim the additional information would simply have elaborated upon and provided further detail about the facts they did disclose, meaning it fell outside the scope of their disclosure duty. We are not persuaded.

*Pagano* is inapposite. In that case, a buyer purchased a condominium and the seller's agent disclosed a past water intrusion problem that affected certain other units in the condominium complex. (*Pagano, supra*, 60 Cal.App.4th at p. 5.) After discovering water-related damage in the purchased condominium, the buyer sued and claimed the seller's agent and the seller failed to disclose newsletters and other documents which chronicled the water intrusion issues, severe water intrusion problems experienced by three other owners and a copy of the complaint against the developer. (*Id*. at pp. 6, 8-9.) The Court of Appeal disagreed. As to the statutory disclosure obligations of the seller's agent, the court concluded the agent satisfied its duty. (*Id*. at pp. 9-10.) The additional facts buyer claimed should have been disclosed "would have served only as elaboration" on the basic disclosed fact of water intrusion resulting in litigation against the developer. (*Id*. at p. 9.) Additionally, the court explained there was no evidence showing the seller's agent or the seller would have had reason to believe the subject condominium would likely experience the same problems as other units. (*Ibid.*)

9

To the extent the claims against the seller were based on the imputed knowledge of the seller's agent, the court found the same reasoning applicable. (*Id*. at p. 10.)

Here, we are not concerned with (1) the statutory duty of a seller's agent to "conduct a reasonably competent and diligent inspection and disclose all material facts such an investigation would reveal" (*Pagano, supra*, 60 Cal.App.4th at p. 8); (2) information that relates to properties other than the one purchased by buyers; or (3) information that simply elaborates on disclosed facts. With respect to the latter, and contrary to sellers' assertions, they did not disclose a "defective" pool or "the existence of an aged, unlevel hillside pool with a long-term history of cracking and 'material repairs.'" All they disclosed were pool crack repairs.

Sellers do not otherwise contest the materiality of the undisclosed facts. Even if they did, whether undisclosed facts are of sufficient materiality to affect the value or desirability of the property is a factual determination for the trier of fact. (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544; *Alexander v. McKnight* (1992) 7 Cal.App.4th 973, 977 (*Alexander*).) And on that point, buyers submitted evidence the pool's structural problems could not be fixed. A house with a structurally sound pool and a house with an irreparable structurally defective pool are two very different things.

Aside from materiality, sellers contend buyers could not establish a triable issue of fact concerning other matters which sellers claim are prerequisites to finding a seller disclosure duty. Specifically, sellers assert undisputed facts demonstrated (1) buyers knew or had reason to know about the undisclosed facts; (2) the undisclosed facts were within the "diligent attention" (*RSB Vineyards, supra*, 15 Cal.App.5th at p. 1097) of buyers; (3) sellers did not know buyers could not learn of the undisclosed facts through diligent attention; and (4) sellers did not actually and justifiably rely on sellers' omissions.

Before reaching the merits of these arguments, we must note something sellers overlook. The additional matters they raise are elements relevant to causes of

10

action for intentional misrepresentation and/or negligent misrepresentation. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 fn. 4 [justifiable reliance is an element of intentional misrepresentation and negligent misrepresentation]; *Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171, 190-191 & fn. 7 [elements of fraudulent concealment]; *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 738 [elements of fraud based on nondisclosure].) As argued, they have no import on the viability of the other causes of action alleged against them, including breach of contract, breach of covenant of good faith and fair dealing, failure to make statutorily required disclosures and general negligence. (See Civ. Code, §§ 1102-1102.19 [disclosures upon transfer of residential property]; *Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 402 [breach of contract]; *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244 [covenant of good faith and fair dealing]; *Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 349 [negligence].) Thus, summary judgment was improper and the most the trial court could have potentially awarded sellers was summary adjudication.

Even so, the evidence demonstrates triable issues of material fact as to each of the additional matters.

With respect to buyers' knowledge, a buyer cannot prevail in a nondisclosure suit against a seller if the facts were known to, or within the diligent attention and observation of the buyer. (*RSB Vineyards, supra*, 15 Cal.App.5th at p. 1097; *Buist v. C. Dudley De Velbiss Corp.* (1960) 182 Cal.App.2d 325, 31.) Sellers argue buyers "must be deemed by law to have known this pool was defective" because buyer's agent (1) made written observations of "cracks in pool" and that "wall tilts to back slope"; and (2) admitted in a deposition she could see "it was an older pool[,]" "the backyard adjoined a slope[,]" there were "cracks in the pool deck[,]" and there were "uneven joints in the pool coping."

11

However, what facts were known to the buyer in a particular case and what facts were within the buyer's diligent attention and observation are factual matters to be resolved by the trier of fact. (*Northwestern Portland Cement Co. v. Atlantic Portland Cement Co.* (1917) 174 Cal. 308, 312; *Sanfran Co v. Rees Blow Pipe Manufacturing Co.* (1959) 168 Cal.App.2d 191, 202.) And, here, there was conflicting evidence. Buyers stated they had no actual knowledge of the more extensive pool repairs or structural problems due to slope creep, and Kerry stated none of the undisclosed conditions could be seen during her agent visual inspection or at any other time. This is arguably corroborated by sellers' agent's visual inspection which did not note any observation of the undisclosed pool repairs or geotechnical engineering issues.

Sellers go one step further, arguing the true condition of the pool was within buyers' diligent attention because sellers would have provided the undisclosed documents had buyers asked. Such an argument turns a seller's obligation on its head. A seller could always prevail in a nondisclosure suit simply by declaring they would have disclosed the information if the buyer had asked. That is not the law. A seller's duty to disclose exists, in large part, because of a seller's superior knowledge. (See Garrett v. Perry (1959) 53 Cal.2d 178, 181.) It is not dependent upon a buyer's prescience in asking the right questions. (See *Linden Partners v. Wilshire Linden Associates* (1998) 62 Cal.App.4th 508, 529 ["It has been repeatedly held by the courts of our state that one to whom a representation is made has no duty to employ means of knowledge which are open to that party and which could, if pursued, reveal the falsity of that representation"]; *Alexander, supra*, 7 Cal.App.4th at p. 977 ["[T]he concept of 'let the buyer beware' is an anachronism in California having little or no application in real estate law"].)

In a similar vein, we reject sellers' assertion that the undisclosed conditions were within buyers' diligent attention as a matter of law because they could have discovered the conditions by retaining experts to inspect the property, something sellers claim was recommended multiple times during escrow. "[A] buyer is entitled to rely

12

upon a seller's representations concerning the area of the property being sold, and is not required to hire an expert to discover the falsity of the seller's representations." (*Furla v. Jon Douglas Co*. (1998) 65 Cal.App.4th 1069, 1079 (*Furla*); see also *Hartong v. Partake, Inc.* (1968) 266 Cal.App.2d 942, 966 (*Hartong*) ["Where a plaintiff commences an investigation, his failure to discover the truth may be excused by the defendant's superior knowledge of the facts, the difficulty in ascertaining all of the facts or plaintiff's incompetence to judge the facts without expert assistance"].)

Turning to sellers' knowledge, whether sellers knew the undisclosed facts were not within the diligent attention of buyers is a factual issue on which there was conflicting evidence. On one hand, sellers noted they twice gave buyers the contact information for the company who performed the pool crack repairs and stated they believed buyers would contact that company if they were interested in the repair information. On the other hand, there was evidence not all the undisclosed information would have been discovered by contacting the pool crack repair company. Sellers possessed documents showing, at minimum, the pool replastering was performed by a different company and the pool shell rotation and slope creep issues were identified and known to companies other than the one for which sellers gave buyers contact information.

Lastly, regarding buyers' reliance, we recognize the seller's duty to disclose does not relieve a buyer of the duty to exercise reasonable care to protect himself or herself. ""If the conduct of the [buyer] in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery" on a fraudulent misrepresentation theory. (*Seeger v. Odell* (1941) 18 Cal.2d 409, 415 (*Seeger*).) However, whether a buyer unreasonably failed to protect him or herself and/or unjustifiably failed to discover true conditions is a case specific factual issue for the trier of fact. (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1383; *Furla, supra*, 65 Cal.App.4th at p. 1079.) Falling

13

within the ambit of the trier of fact's charge is a determination of the level of care to which buyers should be held considering their own intelligence, knowledge and experience. (See *Seeger,* at p. 415; *Hartong, supra*, 266 Cal.App.2d at p. 965.) Notably, mere negligence in failing to investigate or discover the omitted facts is not a defense to intentional misrepresentation. (*Smith v. Williams* (1961) 55 Cal.2d 617, 620.)

Sellers urge us to decide whether buyers' reliance was reasonable and justified as a matter of law. They argue buyers' reliance was unreasonable because buyers' agent did not fulfill her statutory duty to inspect the property. But generally, "[t]he fact than an investigation would have revealed the falsity of the misrepresentation will not alone bar . . . recovery." (*Seeger, supra*, 18 Cal.2d at pp. 414-415.) And, buyer's agent's inspection obligation extended, at most, to "a reasonably competent and diligent visual inspection of the property[.]" (Civ. Code, § 2079.) As previously discussed, there is a triable issue of material fact whether the undisclosed facts were observable via a visual inspection.

In sum, the record is replete with triable issues of material fact concerning the alleged violation of sellers' common law duty of disclosure, as well as the other matters raised by sellers which are relevant to buyers' intentional and/or negligent misrepresentation causes of action.

### 2. *Statutory disclosure duties*

Buyers' fifth cause of action alleged sellers violated their statutory disclosure obligations. Specifically, the cause of action alleged sellers failed to "provide [buyers] with transfer disclosure statements required by law setting forth all material facts relating to the . . . [p]roperty[.]" We requested further briefing from the parties concerning whether sellers met their initial summary judgment burden as to this cause of action. The briefing confirms sellers did not meet their burden.

"[T]he Legislature enacted . . . article 1.5 of the Civil Code which specifies the information a residential real property seller must disclose when transferring the

14

property.  In enacting this article, the Legislature made clear it did not intend to alter a seller's common law duty of disclosure.  The purpose of the enactment was instead to make the required disclosures specific and clear. . . ."  (*Calemine, supra*, 171 Cal.App.4th at p. 161.)  "The Legislature specified the precise disclosure form which must be used" (*id*. at p. 162), known as a transfer disclosure statement.  (Civ. Code, § 1102.6.)  It also specified the disclosures must be made in good faith.  (Civ. Code, § 1102.7.)

In their trial court papers, sellers failed to address a seller's statutory disclosure obligations and the required transfer disclosure form.  The latter is not even included in the record.  Although sellers contend the omission was detrimental to buyers' claim, the converse is true.

A defendant moving for summary judgment or adjudication "has the initial burden of showing that the [challenged] cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action."  (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 950.)  By not providing the trial court with the transfer disclosure statement, other evidence of compliance with their statutory disclosure obligations or an explanation why buyers' claim necessarily failed, sellers did not meet that burden vis-à-vis buyers' fifth cause of action.  As a result, the burden never shifted to buyers to demonstrate a triable issue of fact on that cause of action (*ibid*.), and summary judgment was improper (see *Hayman v. Block* (1986) 176 Cal.App.3d 629, 639 [summary judgment resolves all causes of action on all theories]).

## DISPOSITION

The judgment is reversed.  Buyers are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.