Filed 1/27/23 Morton v. Testa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREGORY MORTON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MARK J. TESTA et al.,<br><br>Defendants and Respondents. | G061024<br><br>(Super. Ct. No. 30-2018-01016996)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert James Moss, Judge. Affirmed.

Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Plaintiff and Appellant.

Attlesey Storm and John P. Ward for Defendants and Respondents.

\*          \*          \*

Shortly after purchasing a home in Dana Point to remodel (the property), plaintiff Gregory Morton discovered it had an extensive termite infestation. He sued the property's seller and the listing agent (collectively defendants), alleging they had failed to disclose termite damage to the property. On the first day of trial, the parties asked the trial court to decide a threshold issue based on several stipulated facts and exhibits: whether defendants were required to disclose that a rotted window, which was indicative of termite damage, had been repaired a few months prior to the sale. The court ruled no disclosure was required and entered judgment in defendants' favor. We affirm. Based on the undisputed facts and exhibits, the termite infestation at the property was disclosed to plaintiff prior to the sale. Disclosure of the window repair would have only elaborated on this underlying disclosed fact and was not required.

I

FACTS AND PROCEDURAL HISTORY

A. *The Complaint*

Plaintiff purchased the property from defendant Family Habitat, Inc. (Family Habitat). The sale closed on October 19, 2017. Defendant Sellers Net, Inc. (Sellers Net) was the listing firm for the property, and defendant Mark Testa represented Sellers Net in the transaction. Testa was an officer and/or director of Family Habitat and Sellers Net.

Plaintiff alleged that after closing, he discovered extensive termite damage to the property that had not been disclosed to induce him into purchasing the property. Based on these allegations, plaintiff asserted claims for fraudulent concealment and violations of Civil Code sections 1102 and 2079 against defendants and breach of contract against Family Habitat.

2

*B. The Stipulated Facts and Exhibits*

Prior to trial, the parties stipulated to over 40 facts and to the authenticity of several exhibits. The parties agreed Family Habitat had never occupied the property but had leased it to the same tenant (the tenant) since acquiring the property in April 2014. In April 2017, the tenant "notified Testa via email that a window at the Property had fallen out of its 'casing' because 'the casing around the window [was] rotted.'" Testa went to the property to view the damaged window and then hired a company to replace it. The window repair was completed in May 2017.

In July 2017, the tenant notified Family Habitat it was terminating its lease. When Family Habitat inquired whether this was due to any problems at the property, the tenant replied, "'I believe it is just because [the property] has been underutilized. No complaints about the property.'"

Plaintiff submitted an offer to purchase the property for $1.3 million in September 2017, and he disclosed plans to spend a substantial amount of time and money remodeling it. Plaintiff noted several repairs were necessary but stated he was "'willing to accept this risk and ha[d] determined this risk in the purchase price of the offer.'" Defendants accepted the offer. A home inspection of the property was subsequently performed, as well as two termite inspections, one obtained by Testa and the other by plaintiff.

Prior to closing, plaintiff's real estate agent submitted a Request for Repairs (the request for repair) to Testa via e-mail, which sought a $5,000 reduction of the purchase price. The request for repair explained, among other things, "[p]er the termite report you obtained, there are no estimates for the cost to remediate termite work, and [plaintiff] believes there is evidence of termites still living and degrading the structural integrity of the home. I concur with his assessment that termite remediation must be completed before any remodeling begins . . . . [¶] Due to the short escrow period, there

will not be enough time to remediate these structural and safety issues prior to the close of escrow." The parties eventually agreed to a $2,600 reduction.

Similarly, plaintiff executed a Verification of Property Condition (the verification) prior to closing, in which he acknowledged that the "[t]ermite work [was] not completed as stated. Subsequent independent inspection resulted in identifying substantial termite and rodent infestation."

At no point prior to closing did defendants disclose to plaintiff "that one of the windows at the Property had been replaced in or around May 2017 because the wood around one of the windows at the Property had 'rotted,' causing the window to fall out of its 'casing.'"

## C. Judgment

On October 13, 2021, the first day of trial, the court was about to address defendants' motions in limine when the parties requested a counsel-only meeting in chambers that "might facilitate things." When proceedings resumed, the court stated, "the record should reflect we had a brief chambers conference off the record, and counsel agreed there is merely one legal issue to be decided by the court." Plaintiff's counsel then explained that the parties had asked the court to decide, based on the stipulated facts and exhibits, "whether or not the fact that . . . a window at the property had fallen out of its casement and subsequently been repaired and/or replaced, whether or not that was a material issue or material defect affecting the property which was required to be disclosed by the defendants to the plaintiff prior to the close of escrow . . . but, in fact, was not disclosed prior to the close of escrow."

The parties briefly summarized their positions on the record. Plaintiff believed "the window falling out of the casement was a material issue affecting the desirability of the property, particularly insofar as it was indicative and representative of larger issues which existed throughout the property but of which [plaintiff] was unaware

4

prior to the close of escrow." Defendants argued that repaired items do not need to be disclosed under *Pagano v. Krohn* (1997) 60 Cal.App.4th 1 (*Pagano*). Further, citing several of the stipulated exhibits, they maintained plaintiff had knowledge of the property's termite infestation prior to closing.

The court agreed with defendants. It explained, "based on the stipulated facts that have been filed with the court and Exhibits 24, 25, 19, and 17 and 21, the court finds for defendant[s]. The -- a repair that has been completed before close of escrow does not need to be disclosed. And that's based on the *Pagano* case cited in defendants' brief. . . . Judgment for defendant[s]." At no point did plaintiff object to the court's pronouncement or state that there were additional issues or evidence for the court to consider prior to entry of judgment. Judgment was entered on November 10, 2021.

Plaintiff now appeals the judgment. Primarily, he argues that *Pagano* did not hold that completed repairs never need to be disclosed. While we agree with plaintiff on this point, we find the trial court correctly ruled that defendants did not have to disclose the window repair for a different reason. The undisputed facts and exhibits show the property's termite infestation was disclosed to plaintiff prior to closing. Defendants did not have to disclose additional details that only elaborated on this disclosed fact.

II

DISCUSSION

A. *Standard of Review*

The parties disagree over the procedure used by the court to arrive at the judgment. Plaintiff argues the court essentially granted summary judgment or a nonsuit in favor of defendants and argues for de novo review. In contrast, defendants maintain the court held a trial on the merits and the resulting judgment should be affirmed if supported by substantial evidence. We need not identify the specific procedure used by the court. Neither party argues that the procedure itself constitutes reversible error.

5

Rather, the dispute over procedure only concerns the proper standard of review on appeal, which is straightforward. This case involves the resolution of a legal question based on undisputed facts. As such, we apply de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801; *Topanga and Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 779-780.)

*B. Defendants' Duty to Disclose*

"In the context of a real estate transaction, '[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.'" (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544.) "A seller's duty of disclosure is limited to material facts; once the essential facts are disclosed a seller is not under a duty to provide details that would merely serve to elaborate on the disclosed facts." (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161.)

In *Pagano*, the buyers purchased a condominium and then sued the seller and the seller's broker for failing to disclose that the property had a water intrusion problem. The undisputed facts showed that prior to closing, the seller and/or the broker disclosed that several units in the condominium complex had water intrusion problems, but the unit for sale had never exhibited such issues. (*Pagano*, *supra*, 60 Cal.App.4th at p. 5.) Likewise, prior to closing, the buyers were given a copy of a letter from the complex's homeowners association (HOA), informing homeowners of a lawsuit filed by the HOA against the complex's developer relating to water intrusion problems. The buyers then submitted a second offer, which was $5,000 less than their initial offer, stating, "'[b]uyer is aware of the ongoing [HOA] lawsuit and the offer reflects that knowledge.'" (*Id*. at p. 6.) A home inspection of the unit was performed for the buyers prior to closing, but it failed to uncover evidence of water intrusion. After moving in, the

6

buyers discovered evidence of water damage and filed suit. (*Ibid.*) The trial court granted summary judgment in favor of the seller and the broker. (*Id.* at p. 5.)

On appeal, the buyers asserted the seller and the broker failed to make several disclosures. First, they asserted the broker should have disclosed (1) newsletters and minutes from HOA meetings discussing the water problems, (2) that she was aware of severe water intrusion problems at three units in the complex, and (3) that she had read the HOA's complaint against the developer. (*Pagano*, *supra*, 60 Cal.App.4th at pp. 8-9.) The appellate court disagreed, explaining "these additional facts would have served only as elaboration on the basic disclosed fact that there was a water intrusion problem in the development affecting some of the units and resulting in a lawsuit against the developer." (*Ibid.*) "[T]he essential facts about the water intrusion problem were disclosed to [the buyers] before [they] made [their] second offer to buy the subject property. [The broker] was not duty bound to elaborate on those facts by providing further details regarding the various manifestations of water intrusion throughout the development or the precise allegations in the [HOA's] complaint against the developer." (*Id.* at p. 10.)

Second, the buyers claimed the seller was required to disclose that her unit "had exhibited evidence of moisture intrusion problems in the past in the form of efflorescence on the concrete in her garage and algae or moss on the exterior wall of the garage." (*Pagano*, *supra*, 60 Cal.App.4th at p. 10.) The appellate court also rejected this argument. It explained, "the past occurrence of algae or efflorescence at [the seller's] unit was not a material fact [the seller] was required to disclose because there is no evidence the algae or efflorescence was related to the general water intrusion problem at the [condominium complex]. In a declaration in support of her summary judgment motion, [the seller] stated the algae and efflorescence disappeared after certain sprinklers were adjusted so as not to spray on the affected areas, and the problem had been remedied long before she sold the property to the [buyers]. [One of the buyers] testified

in his deposition that he inspected the garage and noticed no sign of efflorescence at the time he purchased the property." (*Id*. at p. 11.)

Here, the trial court appears to have relied on the portion of *Pagano* discussing the seller's disclosure requirements as to the algae and efflorescence. The court interpreted this portion of *Pagano* to stand for the proposition that "a repair that has been completed before escrow does not need to be disclosed." But *Pagano* does not support such a broad statement of law. Rather, in *Pagano*, the specific repair did not need to be disclosed because there was no evidence showing the algae and efflorescence purportedly fixed by the repair had any relation to the water intrusion damage alleged by plaintiff. (*Pagano*, *supra*, 60 Cal.App.4th at pp. 10-11.) Nothing in *Pagano's* reasoning suggests a completed repair never needs to be disclosed in the context of a residential real estate sale. We have not been cited any other case that stands for this proposition, nor has our independent research uncovered one. Thus, it appears the trial court erroneously applied the law.

Nonetheless, "[i]f the decision of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion." (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776, italics omitted.) Here, the trial court's judgment is correct based on the other portion of *Pagano*, which held that once a seller or broker discloses a material fact, it is not required to disclose additional facts that only elaborate on the fact disclosed. (*Pagano*, *supra*, 60 Cal.App.4th at p. 10; *Calemine v. Samuelson*, *supra*, 171 Cal.App.4th at p. 161.)

Here, plaintiff believes the window repair should have been disclosed because it was indicative of the larger termite problem affecting the property. But the five exhibits cited in the trial court's ruling all show plaintiff had knowledge of the termite infestation at the property prior to closing. We review these five exhibits below.

8

Exhibit 24 is a Wood Destroying Pests and Organisms Inspection Report prepared prior to closing by McIntyre Exterminators on behalf of defendants. This report states drywood termites were found on multiple locations on the property. The report also found dryrot at door jambs, plumbing access, and molding. There is no dispute plaintiff received this report.

Exhibit 25 is another Wood Destroying Pests and Organisms Inspection Report prepared for plaintiff by Terminix International. This report also found evidence of drywood termites. In particular, it notes (1) "[e]vidence of drywood termites was noted at/in *Entire Structure of Home*"; (2) "[d]rywood termites have damaged Drywood Termite Galleries Found in Attic, and Drywood Swarmers at/in *Entire Structure of Home*"; and (3) "[e]vidence of Drywood Termites was noted at/in *Entire Structure of Home which appears to extend into inaccessible areas.*" (Italics added.) The report set forth a number of recommendations, including (1) fumigating the entire structure to eradicate the drywood termites, and (2) "[o]pen[ing] inaccessible areas for further inspection."

Exhibit 19 is the request for repair made by plaintiff. The request for repair states, "[a]fter careful review of the home inspection, mold estimate, *termite report*, electrical safety issues, and plumbing issues, [plaintiff] is requesting a price reduction of $5,000, bringing the price to $1,295,000. . . . Per the termite report [defendants] obtained, there are no estimates for the cost to remediate termite work, and *[plaintiff] believes there is evidence of termites still living and degrading the structural integrity of the home.* I concur with his assessment that termite remediation must be completed before any remodeling begins . . . ." (Italics added.)

Exhibit 17 is an Agent Visual Inspection Disclosure signed by plaintiff (the inspection disclosure). The inspection disclosure states, "**THE UNDERSIGNED, BASED ON A REASONABLY COMPETENT AND DILIGENT VISUAL INSPECTION OF THE REASONABLY AND NORMALLY ACCESSIBLE**

9

**AREAS OF THE PROPERTY, STATES THE FOLLOWING**," followed by list of issues identified on the property. This list of issues includes, "[u]nknown multiple winged pests in master bedroom that *[plaintiff] suspects are termites*." (Italics added.)

Finally, Exhibit 21 is the verification, signed by plaintiff, which states that "Seller has completed any repairs, alterations, replacements or modifications as agreed to by Buyer and Seller with the following exceptions: [¶] Termite work not completed as stated. Subsequent independent inspection resulted in identifying *substantial termite and rodent infestation*." (Italics added.)

Plaintiff does not dispute that he received any of the above documents, nor does he contend that defendants prevented him from reading any of them. Thus, he is charged with the information the documents contain. (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1389.) Further, the stipulated facts and exhibits show plaintiff had actual knowledge of the termite problems at the property. He signed the inspection disclosure, which indicated there were "[u]nknown multiple winged pests in master bedroom that *buyer* suspects are termites." (Italics added.) He also signed the verification, which stated there was a "substantial termite . . . infestation." Further, he obtained a price reduction for the property due to defendants' failure to remediate the termite issues prior to closing.

Based on the information in the undisputed exhibits, plaintiff had sufficient notice that the entire property was infested with termites. Disclosure of the repaired rotted window would have only provided further elaboration of this material fact. As such, defendants were not required to disclose it. (*Pagano*, *supra*, 60 Cal.App.4th at p. 10; *Calemine v. Samuelson*, *supra*, 171 Cal.App.4th at p. 161.)

10

## III

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.